Clara L. SCHMIDT, as mother and natural guardian of Angelia R. Schmidt and Melissa L. Schmidt, minors, and Clara L. Schmidt, individually, Respondents,

v.

CITY OF COLUMBIA HEIGHTS, Appellant.

No. A04–2321.

Court of Appeals of Minnesota.

May 24, 2005.

Cort C. Holten, Janet Waller, Jeffrey D. Bores, Chestnut & Cambronne, P.A., Minneapolis, MN, for Respondents.

Brian H. Gaviglio, League of Minnesota Cities, St. Paul, MN, for Appellant.

Considered and decided by LANSING, Presiding Judge; HALBROOKS, Judge; and MINGE, Judge.

## OPINION

HALBROOKS, Judge.

Richard Schmidt retired from the Columbia Heights police department after suffering a disabling injury in the line of duty. When Officer Schmidt later died of causes unrelated to his injury, appellant City of Columbia Heights (city) notified his family that it would no longer pay its contribution toward their health-care benefits. Respondents Clara L. Schmidt and her minor children, Angelia[1] and Melissa (collectively, the Schmidts) sued, arguing that Minn.Stat. § 299A.465, subd. 1 (2004), which requires the employer of a police officer or firefighter who is disabled in the line of duty to continue to contribute to the health-care coverage for the officer's or firefighter's dependents "until the officer or firefighter reaches the age of 65," obligated the city to pay its contribution until the date on which Officer Schmidt would have turned 65. The district court granted respondents' motion for summary judgment.

The city challenges the district court's grant of summary judgment, arguing that the plain meaning of the phrase "reaches the age of 65" conditions the payment on the officer still being alive. Because we conclude that such a reading would produce an unreasonable result and thwart the intent of the legislature, we affirm.

## FACTS

The material facts in this case were stipulated to by the parties and are not in dispute. Richard Schmidt began employment with the Columbia Heights police department in 1969 and was continuously employed full time as a police officer until March 24, 2000. During the course of his employment with the city, Officer Schmidt suffered a disabling injury on May 15, 1999. As a result of that injury, Schmidt applied to the Public Employees Retire-

---

**1.** This child's actual name is unclear. The title of appellant's brief refers to her as "Angelia," as does the original summons and complaint. Respondents' motion for summary judgment refers to her as "Angela." The title of respondents' brief refers to her as "Angeline."

ment Association of Minnesota (PERA) for early retirement and disability benefits pursuant to Minn.Stat. § 353.656, subd. 1 (2004). His application was approved, and Officer Schmidt notified the city that he would be retiring.

After receiving notice of Officer Schmidt's retirement, the city notified him that it would continue paying its contribution for his family health coverage, which included Officer Schmidt's wife and two minor daughters, pursuant to Minn.Stat. § 299A.465, subd. 1 (2002).[2] The city paid its contribution for the health benefits provided to Officer Schmidt and his dependents through September 30, 2003.

On September 16, 2003, Officer Schmidt died from causes unrelated to his disability retirement. On September 24, the city notified the Schmidts that due to Officer Schmidt's death, the city's contribution toward their health benefits would terminate and that if the Schmidts wanted to continue coverage pursuant to Minn.Stat. § 62A.146 (2004) and the Consolidated Budget Reconciliation Act (COBRA), they would be required to pay the premium for family coverage.

The Schmidts subsequently filed a declaratory-judgment action, alleging that the city had violated Minn.Stat. § 299A.465, subd. 1, by failing to continue its contribution toward their health-care coverage. The parties stipulated to the facts, and both the city and the Schmidts moved for summary judgment. The district court filed an order granting the Schmidts' motion and denying that of the city on August 24, 2004. Summary judg-

ment in favor of the Schmidts was entered on August 30. An amended order was filed on September 1 to correct clerical errors and an amended summary judgment was entered on September 13. In its order, the district court reserved the issue of arrearages. The parties subsequently stipulated to the amount of arrearages, and the district court filed an order on October 13, 2004, awarding the Schmidts the stipulated amount of $5,781.25. Final judgment was entered on November 2, 2004. This appeal follows.[3]

## ISSUE

Does Minn.Stat. § 299A.465, subd. 1 (2004), require the employer of a public safety officer who is disabled in the line of duty to continue to pay health-care benefits for the dependents of that officer when the officer dies of causes unrelated to his or her disability prior to reaching the age of 65?

## ANALYSIS

▆▆▆ The parties have stipulated to the facts in this case. The only issue before us is the proper interpretation and application of Minn.Stat. § 299A.465 (2004). "On an appeal from summary judgment, when the facts are stipulated, [this court] review[s] de novo whether the [district] court erred in its application of the law." *Sprint Spectrum LP v. Comm'r of Revenue*, 676 N.W.2d 656, 658 (Minn. 2004). Statutory construction is a question of law, which we review de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

---

**2.** The 2004 version of the statute is the same in all relevant aspects. Accordingly, the remainder of this opinion will cite to the 2004 statute.

**3.** The city initially appealed from the August 30, 2004 summary judgment. By order, this court dismissed the appeal as taken from a

nonappealable partial adjudication because the August judgment reserved the issue of arrearages. *Schmidt v. City of Columbia Heights*, No. A04–1795 (Minn.App. Oct. 29, 2004) (order). The current appeal is from the judgment entered November 2, 2004.

This action presents an issue of first impression: whether Minn.Stat. § 299A.465, subd. 1(c), requires the employer of a public-safety officer who is disabled in the line of duty to continue to pay health-care benefits for the dependents[4] of that officer when the officer dies of causes unrelated to his or her disability prior to reaching the age of 65.

Our primary objective in interpreting a statute is to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2004). When interpreting a statute, we first determine whether the statutory language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). A statute is ambiguous when its language is "subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (quotation omitted). If the legislative intent "is clearly discernible from plain and unambiguous language, statutory construction is neither necessary nor permitted and courts apply the statute's plain meaning." *Am. Tower,* 636 N.W.2d at 312; *see also* Minn.Stat. § 645.16. But if a statute is reasonably susceptible of more than one meaning, we apply principles of statutory construction to determine the legislature's intent. *Gomon v. Northland Family Physicians, Ltd.,* 645 N.W.2d 413, 416 (Minn.2002). In construing a statute, we are guided by the premise that "[t]he legislature does not intend a result that is absurd, impossible

of execution, or unreasonable" and "intends the entire statute to be effective and certain." Minn.Stat. § 645.17(1)-(2) (2004).

The statute at issue here provides:

> The employer is responsible for the continued payment of the employer's contribution for coverage of the officer or firefighter and, if applicable, the officer's or firefighter's dependents. Coverage *must* continue for the officer or firefighter and, if applicable, the officer's or firefighter's dependents until the officer or firefighter *reaches the age of 65.* However, coverage for dependents does not have to be continued after the person is no longer a dependent.

Minn.Stat. § 299A.465, subd. 1(c) (emphasis added).

At oral argument, the city contended that language in other, related statutes demonstrates that if the legislature had intended the city's contribution to continue after the officer or firefighter's death, it could have explicitly so required.[5] We first note that this argument was mentioned only in passing to the district court with a general reference to chapter 353 in the city's reply brief.[6] The city did not cite to any specific statutory language, nor is there any indication in the record that this argument was developed for the district court. Therefore, the argument might reasonably be considered to be waived. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that appellate

---

**4.** The city does not dispute the fact that respondents meet the statutory definition of dependents. *See* Minn.Stat. § 62L.02, subd. 11 (2004) (defining "dependent" for the purposes of Minn.Stat. § 299A.465).

**5.** In support of this argument, the city relies on two statutes: Minn.Stat. § 353.656 (2004) and Minn.Stat. § 471.61 (2004). Minn.Stat. § 363.656, subd. 6a(a), states that "[i]f a member who is receiving a disability benefit ... dies before attaining age 65 ..., the sur-

viving spouse shall receive a survivor benefit...." Minn.Stat. § 471.61, subd. 2b(c), provides that employers are not required to extend voluntary continuation of group insurance to a former employee's dependents "after the death of the former employee."

**6.** In its reply brief, the city simply stated that "under the PERA statute [Minn.Stat. ch 353], the rights of the surviving spouse and dependent children are expressly articulated."

courts will generally not consider matters not argued and considered by the district court). But even if the argument is not deemed to be waived, the statutes cited by the city equally support the counterargument: if the legislature had intended the contribution requirement to expire upon the death of an officer, it could have explicitly stated so. *See* Minn.Stat. § 471.61, subd. 2b(c) (2004) (providing that voluntary continuation of group health insurance to a former employee's dependents need not be extended "after the death of the former employee"). But because no such language was included by the legislature, we are left to discern the legislative intent expressed in the phrase "reaches the age of 65."

> As the district court noted:
> The statute lists only two circumstances that relieve the employer of its duty to provide coverage to dependents. One circumstance is the loss of dependency status under Minn.Stat. § 62L.02, [subd.] 11 [(2004)], which is inapplicable under the facts of this case. The other circumstance that relieves the employer of its duty to cover an officer's dependents occurs when the officer reaches the age of 65. The statute is silent regarding whether the employer's responsibility to continue payment for the dependent's coverage ceases following an officer's death prior to reaching the age of 65.

(Citation omitted.)

The city argues that the statutory language is "clear and unambiguous," and that "[t]he word 'reaches' means the officer must still be living." The district court disagreed and concluded that the statutory language may be read to "require coverage until the 65th anniversary of an officer's [birth]." Accordingly, the district court held that the city was obligated to pay benefits until "Officer Schmidt *would have* turned 65." (Emphasis·added.)

Accepting the city's interpretation would lead to an unreasonable result. If an officer must be living in order to "reach" age 65, such an event can never occur whenever an officer who has been disabled in the line of duty dies before turning 65. As the district court correctly observed,. pursuant to the statute, an employer's obligation to pay for benefits ends only when the officer reaches age 65 or the beneficiary loses dependency status. Consequently, an employer of a·disabled officer who died before turning 65 would be required to pay for the health coverage of the officer's dependents until such time as those individuals no longer· have dependent status, regardless of the officer's age at the time of disability or death because the officer could never "reach" age 65.

But there is another reasonable interpretation of the statutory language—that espoused by the district court. One reaches the age of 65 on the 65th anniversary of one's birth. Accordingly, it is reasonable to interpret the statute as requiring employers to pay for health benefits until the 65th anniversary of the officer's birth— when the officer "would have" turned 65. This interpretation has the added advantage of certainty for both the employer and the officer's family. An officer's birthdate remains constant and provides a clear and definite point of reference regardless of his or her age at death.[7]

This interpretation would also effectuate the intent of the legislature. Police officers and firefighters work in hazardous conditions to protect the property and

---

7. It is, of course, possible that the officer's date of birth may be subject to dispute and thus uncertain. But in such a case, the date on which the officer turned 65 would be in contention even if the officer was still living.

safety of the public. The special nature of their sacrifice and contribution has been elsewhere recognized by the legislature. *See* Minn.Stat. § 353.63 (2004) (noting that police officers and firefighters deserve special consideration due to the hazardous character of their work). One purpose of Minn.Stat. § 299A.465, subd. 1, is to provide continued health coverage for the dependents of officers who are disabled in the line of duty. To rescind such coverage because the officer dies prior to his or her 65th birthday would frustrate this purpose and create an additional burden for those who have just lost a family member.

The statute mandates continued coverage for "the officer ... *and,* if applicable, the officer's ... dependents." Minn.Stat. § 299A.465, subd. 1(c) (emphasis added). The city argues that "[b]ecause the statute requires an employer contribution for *both* the officer and dependents, the provision is conjunctive. Accordingly, the [c]ity is not required to continue paying the employer's portion just for [the Schmidts], if the disabled officer is no longer living." (Emphasis in original.) The city thus focuses on the word "and," suggesting that if it is no longer required to pay for both Officer Schmidt *and* his dependents (because the officer is no longer alive), it is not required to pay for just his dependents' coverage.

Despite the city's contention to the contrary, "and" and "or" are often ambiguous and open to multiple interpretations. *See Am. Family,* 616 N.W.2d at 281 n. 4 (noting the risk inherent in the use of conjunctions). The city reads the statute as requiring joint coverage or no coverage. But as the supreme court has noted, "and" can be read either jointly or severally. *Id.* Here, the intent of the legislature is best carried out by applying the several meaning of the term.

The city also contends that interpreting the statute to require payment of health benefits to an injured officer's dependents under this subdivision until the officer would have turned 65 erases the statutory distinction between "dependents of an officer disabled in the line of duty [and] dependents of an officer killed in the line of duty." The city correctly points out that the legislature has chosen to distinguish between these two groups in the provision of health benefits. Employers are required to provide health benefits for the dependents of officers disabled in the line of duty until "the *officer* ... reaches the age of 65." Minn.Stat. § 299A.465, subd. 1(c) (emphasis added). In contrast, for dependents of officers killed in the line of duty, "[c]overage must continue ... for the period of time that the *person* is a dependent up to the age of 65." Minn. Stat. § 299A.465, subd. 2(c) (emphasis added). Thus, the benchmark for a member of the first group is the age of the officer, but the benchmark for a member of the second group is the age of the dependent. Contrary to the city's assertion, interpreting subdivision 1(c) to require payment until the 65th anniversary of the officer's birth would not conflate these distinct points of reference.

The city further argues that such a reading of the statute "contravenes the legislative intent to balance the need to provide health benefits for disabled officers and dependents with the need to protect the thinly-stretched budgets of the state's political subdivisions against rapidly rising health insurance costs." We note that the statute is silent regarding budgetary impacts on political subdivisions. Moreover, requiring the city to pay dependent health-care benefits until Officer Schmidt would have turned 65 does not impose on the city any obligations it would not have had if Officer Schmidt had not died. In fact, because the city no longer needs to pay benefits for Officer Schmidt,

it has less financial responsibility than it would have if he had lived.

Minn.Stat. § 299A.465, subd. 1(c), requires that employers continue to contribute to the health coverage of the dependents of an officer who is disabled in the line of duty until that officer "reaches the age of 65." The intention of the legislature is best effectuated by reading this language to require contribution until the 65th anniversary of the officer's birth.

## DECISION

Because holding otherwise would produce an unreasonable result and thwart the intent of the legislature, we conclude that when an officer who is disabled in the line of duty dies prior to attaining age 65, Minn.Stat. § 299A.465, subd. 1(c) (2004), requires the officer's employer to continue to contribute to the health coverage of the officer's dependents until the 65th anniversary of the officer's birth. We therefore affirm the decision of the district court.

**Affirmed.**