618

Michael D. FRAZIER, as Trustee for the Next–of–Kin of Brian L. Frazier, deceased, Appellant (A09–2212),

Harry James Rhoades, Sr., as Trustee for the Next–of–Kin of Harry James Rhoades, Jr., deceased, Appellant (A09–2213),

Denise Renee Shannon, as Trustee for the Next–of–Kin of Bridgette Marie Shannon, deceased, Appellant (A09–2214),

Elizabeth Chase, as Trustee for the Next–of–Kin of Corey Everett Chase, deceased, Appellant (A09–2215),

v.

BURLINGTON NORTHERN SANTA FE CORPORATION, et al., Respondents (A09–2212, A09–2213, A09–2214, A09–2215),

Richard P. Wright, as Special Administrator of the Estate of Corey E. Chase, deceased, Appellant (A09–2212),

Cristy Y. Frazier, as Special Administrator for the Estate of Brian Frazier, deceased, Appellant (A09–2213, A09–2214, A09–2215),

BNSF Railway Company, third-party plaintiff, Respondent (A09–2213, A09–2214, A09–2215),

v.

Richard P. Wright, as Special Administrator for the Estate of Corey Everett Chase, deceased, Appellant (A09–2213, A09–2214, A09–2215).

Nos. A09–2212, A09–2213, A09–2214, A09–2215.

Supreme Court of Minnesota.

March 28, 2012.

As Modified April 19, 2012.

Patrick J. Sauter, Mark R. Bradford, Bassford Remele, P.A., Minneapolis, MN, for appellants Michael D. Frazier and Cristy Y. Frazier.

William O. Bongard, Sieben, Grose, Von Holtum, & Carey, Ltd., Minneapolis, MN, for appellant Harry James Rhoades, Sr.

Allan F. Shapiro, Finn Shapiro, St. Louis Park, MN, for appellant Denise Renee Shannon.

Sharon L. Van Dyck, Van Dyck Law Firm, PLLC, St. Louis Park, MN; and Robert L. Pottroff, Pottroff Law Office, P.A., Manhattan, KS; and Paul E. Godlewski, Schwebel, Goetz & Sieben, Minneapolis, MN, for appellant Elizabeth Chase.

Timothy R. Thornton, Sam Hanson, Jonathan P. Schmidt, Briggs and Morgan, P.A., Minneapolis, MN, for respondents Burlington Northern Santa Fe Corporation, Burlington Northern Santa Fe Railroad Company, and BNSF Railway Company.

Paul E.D. Darsow, on behalf of Dan Saphire, Arthur, Chapman, Kettering, Smetak, and Pikala, P.A., Minneapolis, Minnesota, for amicus curiae Association of American Railroads.

Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN, for amicus curiae Minnesota Association for Justice.

## OPINION

PAGE, Justice.

The chief issue presented in this wrongful-death case is whether respondent BNSF Railway Company (BNSF) is entitled to a new trial on liability as a result of an allegedly erroneous instruction to the jury on the railroad's duty of care. The district court instructed the jury, without objection from BNSF, to apply a common-law or "reasonable person" standard of care. After the jury returned a verdict in appellants' favor,[1] BNSF moved for a new trial on several grounds, including that it could be held liable only if appellants proved that the railroad failed to comply with a different standard of care, namely, the standard of care established by applicable federal regulations. A divided court of appeals concluded the district court's instruction to the jury and special verdict form using a common-law duty of care constituted plain error that substantially affected BNSF's rights and the fairness and integrity of the proceedings, and remanded the matter to the district court for a new trial.

We assume, without deciding, that the instruction to the jury and special verdict question were plain error that substantially affected BNSF's rights, but we conclude that any error in the instructions and verdict form did not affect the fairness and integrity of the proceedings. We therefore reverse the court of appeals on this point. Although the court of appeals did not address the district court's denial of BNSF's motion for a new trial, we address

---

1. The appellants here are Michael D. Frazier, as trustee for the next-of-kin of Brian L. Frazier; Harry James Rhoades, Sr., as trustee for the next-of-kin of Harry James Rhoades, Jr.; Denise Renee Shannon, as trustee for the next-of-kin of Bridgette Marie Shannon; and Elizabeth Chase, as trustee for the next-of-kin of Corey Everett Chase.

it in the interest of judicial economy. We affirm the district court's denial of the new trial motion on all grounds asserted by BNSF: improperly admitted evidence, newly discovered evidence, and the instruction given to the jury on the adverse inference to be drawn from BNSF's failure to produce certain evidence at trial.

On September 26, 2003, a collision at the Ferry Street crossing in Anoka between a Chevrolet Cavalier and a freight train owned and operated by the BNSF Railway Company resulted in the deaths of all four occupants of the car: Brian Frazier, Bridgette Shannon, Corey Chase, and Harry Rhoades. The representatives of the estates of Frazier, Shannon, Chase, and Rhoades brought separate wrongful death claims against BNSF, alleging that BNSF had negligently maintained the warning signals at the Ferry Street crossing and had failed to comply with several state and federal regulations governing maintenance of the railroad tracks and the crossing signals.

BNSF denied that it had negligently maintained the crossing and asserted that the driver of the Cavalier had driven around the fully-lowered crossing gates into the path of the train. BNSF further asserted, as an affirmative defense, "that at all material times hereto … it fully complied with the standard of care expected of similar railroads operating under similar circumstances." But BNSF never moved to dismiss appellants' claims based on its compliance with applicable federal regulations. And in its motion for summary judgment, BNSF did not assert that its compliance with applicable federal regulations was sufficient to meet its duty of care toward appellants. Rather, BNSF asserted that it was entitled to judgment because railroads "are entitled to summary judgment when there are functioning warning gates," citing *Reales v. Conrail,*

84 F.3d 993 (7th Cir.1996), and *Ayoub v. Amtrak,* 76 F.3d 794 (6th Cir.1996), and "there is overwhelming and undisputed evidence proving the gates and lights were activated and operating properly at the time of the accident."

After a lengthy period of discovery, the claims of the four appellants were consolidated and the trial was bifurcated between liability and damages. In his opening statement, trial counsel for BNSF (BNSF's appellate counsel did not represent it at trial) told the jury the case would "break[ ] down, from the railroad's perspective, into four main points." The first of those points, BNSF's counsel told the jury, was that the "state-of-the-art BNSF signal system provided proper and adequate warning and was working as intended [on] September 26, 2003." BNSF's counsel continued: "There's overwhelming evidence that the signal system was working properly the night of the accident, and it will be appropriate for you to find as much when it gets to the special verdict form."

During trial, appellants presented evidence that the crossing gates at the Ferry Street crossing had failed to function properly on three previous occasions. Accident reconstructionists retained by appellants testified that the Cavalier was in its proper lane when it was struck by the train, disputing BNSF's claim that the car had driven around the lowered crossing gates. Appellants also introduced testimony of several BNSF employees who had performed repairs on the tracks at the Ferry Street crossing before the accident and expert testimony to explain the purported failure of the warning signals to activate in time for the driver of the Cavalier to stop short of the crossing.

BNSF advanced the theory that the Cavalier drove around the lowered gate and onto the track. To support that theory,

BNSF presented an accident reconstruction report prepared by the Minnesota State Patrol, expert testimony, and the eyewitness accounts of the train's engineer and conductor. BNSF also introduced the testimony of its own employees and experts that the track and signal warning system had been properly maintained and that any repair work done on the crossing before the accident had been performed appropriately.

Before the close of trial, the parties submitted proposed jury instructions and special verdict forms to the district court. Appellants' proposed jury instructions, in relevant part, included Civil Jury Instruction Guide (CIVJIG) 25.10, which defines "negligence" as "the failure to use reasonable care" and defines "reasonable care" as "the care a reasonable person would use in the same or similar circumstances." 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil,* CIVJIG 25.10 (5th ed.2006). Appellants also proposed that the jury be instructed that, at the time of the accident, "there were seven federal regulations in force that set out the law that a railroad must follow" and "seven Minnesota state regulations in force that set out the law that a railroad must follow." Appellants requested that the federal regulations—setting forth, among other responsibilities, the railroad's duty to investigate "a credible report of a warning system malfunction," to repair "any essential component of a highway-rail grade crossing warning system [that] fails to perform its intended function," and to periodically test highway-rail crossing warning systems—be read to the jury. Appellants further requested that the jury be instructed that a violation of one or more of the regulations, "although not necessarily negligence, is evi-

dence of negligence to be considered by you along with all of the other facts and circumstances in this case." Finally, appellants requested that the jury be instructed using CIVJIG 25.46, modified as follows:

There is evidence in this case that defendant BNSF followed a legal duty written into law as a statute.

It is not conclusive proof of reasonable care if you find that BNSF followed such a legal duty.

It is only evidence of reasonable care.

Consider this evidence along with all the other evidence when you decide if reasonable care was used.

*See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil,* CIVJIG 25.46 (5th ed.2006).

For its part, BNSF also proposed that the jury be instructed using CIVJIG 25.10 (defining "negligence" and "reasonable care"). BNSF did not propose that the jury be instructed as to any federal or state regulations governing track or signal maintenance. Nor did BNSF propose that the jury be instructed that the railroad could not be found negligent if it had complied with the federal and state regulations governing track and signal maintenance. BNSF did not object to plaintiffs' proposed CIVJIG 25.46.

Both of the proposed special verdict forms submitted by the parties asked the jury to find whether BNSF was negligent,[2] whether BNSF's negligence was a direct cause of the accident, whether the driver of the Cavalier was negligent, and whether the driver's negligence was a direct cause of the accident. BNSF did not request that the jury find whether it had complied with federal regulations or whether any

---

**2.** BNSF's proposed special verdict form asked the jury to decide "Was BNSF Railway Company negligent in its operations on September 26, 2003?"

failure to comply with those regulations was a direct cause of the accident.

The district court instructed the jury that compliance with federal regulations was not conclusive proof of reasonable care. BNSF did not object to the jury instructions as read. Nor did BNSF argue to the jury in closing statements that compliance with federal regulations was conclusive evidence of its reasonable care. Rather, counsel for BNSF argued that "[t]he evidence is consistent in this case ... that the [signal] system was working as intended and that the driver drove—deliberately disregarded the crossing system and drove around the flashing lights and gates."

However, within minutes of the dismissal of the jury to deliberate, BNSF moved for judgment as a matter of law on liability, arguing among other things that it had proven its compliance with all relevant federal regulations and therefore "plaintiffs' claim in this regard should be preempted and barred." Appellants opposed the motion, arguing that the evidence introduced during trial demonstrated that BNSF had warning of prior intermittent signal malfunctions, partial signal activations, and intermittent activation failures at the Ferry Street crossing and failed to properly investigate and correct them, in violation of federal regulations. The court denied BNSF's motion for judgment as a matter of law.

Later that evening, the jury returned its verdict, finding BNSF 90% liable for the accident and Brian Frazier, the driver of the car, 10% liable. In the second phase of the bifurcated trial, the jury awarded the estates of each of the Cavalier's occupants $6 million in wrongful death damages with the award to the estate of Brian Frazier, the driver of the car, reduced by 10% for his comparative negligence.

BNSF timely filed a post-trial motion for judgment as a matter of law arguing, among other things, that appellants' claims against it were preempted by federal law. In the alternative, BNSF sought a new trial, arguing that the district court had erred in instructing the jury and in using a special verdict form that reflected a common-law standard of care. In addition, BNSF sought a new trial for an allegedly improper adverse inference instruction to the jury, for the erroneous admission of evidence, and on grounds of newly discovered evidence. Both the motion for judgment as a matter of law and the motion for a new trial were denied.

BNSF appealed the district court's rulings. The court of appeals affirmed the district court's denial of BNSF's motion for judgment as a matter of law but reversed the district court's denial of BNSF's motion for a new trial. *Frazier v. BNSF Corp.*, 788 N.W.2d 770, 777, 781 (Minn.App.2010). The court of appeals concluded that the district court had erred by instructing the jury to apply a common-law or "reasonable person" standard of care, rather than a standard of care based on compliance with the federal regulations governing track, signals, and other aspects of railway crossings. *Id.* at 778. In doing so, the court of appeals applied the four-part plain-error test we adopted in *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998) for criminal cases: "there must be (1) error; (2) that is plain; and (3) the error must affect substantial rights. If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *Frazier*, 788 N.W.2d at 781. The court concluded that the error in the jury instruction was plain and that it had affected BNSF's substantial right to a fair trial. *Id.* Finally, the court concluded that BNSF was entitled to a new trial on liability "to ensure

fairness and the integrity of this judicial proceeding." *Id.* Because the court granted BNSF a new trial based on the error in the jury instruction and special verdict form on negligence, the court did not reach BNSF's challenges to the district court's denial of BNSF's motion for new trial on grounds of newly discovered evidence, erroneous admission of evidence, or the adverse inference instruction. *Id.* at 774.

■ All parties sought review of the court of appeals' decision. In addition, BNSF sought conditional cross-review of the district court's denial of its motion for judgment as a matter of law. We granted only appellants' petition for review of the court of appeals' reversal of the district court's denial of a new trial on liability based on the allegedly erroneous jury instruction on the standard of care. Because the decision to grant or deny a motion for a new trial rests largely within the discretion of the district court, we review the district court's decision for clear abuse of discretion. *See Moorhead Econ. Dev. Auth. v. Anda,* 789 N.W.2d 860, 892 (Minn.2010).

## I.

Appellants' petition for review presents four questions for our consideration. The first is whether, as the court of appeals concluded, it was error for the district court to instruct the jury to consider BNSF's negligence, and to use a special verdict form, applying a common-law standard. The district court instructed the jury using the modified version of CIVJIG 25.46:

> There is evidence in this case that defendant BNSF followed a legal duty written into law as a statute. It is not conclusive proof of reasonable care if you find that BNSF followed such a legal duty. It is only evidence of reasonable care. Consider this evidence along with all the

other evidence when you decide if reasonable care was used.

The court of appeals concluded that the district court's instructions to the jury and special verdict form "were clearly inconsistent with controlling law." *Frazier,* 788 N.W.2d at 778. More specifically, the court of appeals cited two Supreme Court cases concluding that "federal regulations concerning railroad crossings preempt state laws and common-law standards." *Id.* at 775 (citing *Norfolk S. Ry. Co. v. Shanklin,* 529 U.S. 344, 358–59, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000), and *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)). Appellants contend that the district court's instructions were not erroneous because under 49 U.S.C. § 20106(b)(A)–(B) (2007), common-law claims are preempted only when the railroad has fully complied with the federal regulations, and BNSF failed to prove such compliance at trial. BNSF counters that the district court's instructions and special verdict form were clearly erroneous because plaintiffs' claims were predicated on an alleged signal activation failure and federal regulations comprehensively address every aspect of crossing signal inspection and maintenance.

If it was error to instruct the jury to consider BNSF's negligence using a common-law standard, the next question is whether BNSF invited the alleged error in the jury instructions. The court of appeals concluded that BNSF had not invited the error because BNSF had not proposed use of CIVJIG 25.46, the instruction that advised the jury that BNSF's compliance with its legal duty was not conclusive proof of reasonable care. *Frazier,* 788 N.W.2d at 779. Appellants contend that if the jury was instructed in error, it was error that BNSF invited in several ways: by proposing special or custom jury instructions that asked that the jury determine only wheth-

er BNSF was negligent based on common-law notions of reasonable care; by failing to propose an instruction that included the federal regulations; by failing to request that the jury determine whether BNSF had complied with federal regulations; and by failing to object to any of the instructions on its standard of care. BNSF responds that because it was the appellants' burden to prove the railroad's negligence, it was the appellants' burden to propose the appropriate instruction for the jury on the railroad's duty of care, just as it was BNSF's burden to prove the comparative negligence of the driver and to propose the appropriate instruction for the jury on the driver's duty of care.

If we were to conclude that BNSF invited the error in the jury instructions and special verdict form, we would then be presented with the question of whether invited error can be reviewed as plain error. The court of appeals concluded that "BNSF is not precluded from challenging even the instructions it did propose," *Frazier*, 788 N.W.2d at 779, and applied the plain-error test, *id.* at 780–81 (citing *Griller*, 583 N.W.2d at 740). Appellants contend that invited and unobjected-to errors in jury instructions in civil cases are not reviewable on appeal. BNSF counters that invited errors in jury instructions in civil cases are reviewable for plain error under Minn. R. Civ. P. 51.04(b).

If invited errors are reviewable for plain error, then the final question is whether BNSF is entitled to a new trial under the plain-error doctrine. The court of appeals concluded that BNSF was entitled to a new trial under the plain-error doctrine because the instruction to the jury using the wrong standard of care was plainly erroneous and it was "a prejudicial error that doubtless affected the outcome of the case." *Frazier*, 788 N.W.2d at 781. In its view, the court was "compelled to conclude

that, to ensure fairness and the integrity of this judicial proceeding, BNSF is entitled to a new liability trial." *Id.* Appellants contend that BNSF cannot show it was prejudiced by the jury instructions because there was evidence of BNSF's violation of federal regulations. BNSF counters that it was "severely prejudiced" by a jury instruction that "permitted [its] compliance [with federal regulations] to be ignored."

■ We need not address the first three questions in order to resolve this matter because we conclude that even if the instruction to the jury and special verdict form question were erroneous, even if BNSF invited the error, and even if invited error is reviewable for plain error, BNSF is not entitled to a new trial.

■ Under Minn. R. Civ. P. 51.04(a), a party preserves for appeal its objection to a jury instruction, whether actually given or not, by making a proper objection on the record. Minnesota Rule of Civil Procedure 51.04(b) permits a court to consider an error in a jury instruction to which no objection was made only if the error is "a plain error ... affecting substantial rights."

■ In *Griller*, we adopted in criminal cases the Supreme Court's test for plain error, under which an unobjected-to error is subject to appellate review only if: (1) there is an error, (2) that is plain, and (3) that affects a party's substantial rights. 583 N.W.2d at 736 (citing *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). Failure to satisfy any of the prongs of the plain-error test dooms the claim. *State v. Barrientos–Quintana*, 787 N.W.2d 603, 611 (Minn. 2010). Further, satisfaction of each of the prongs does not mandate reversal of the error; rather, we will address the error only if necessary "to ensure fairness and

the integrity of the judicial proceedings." *Griller*, 583 N.W.2d at 740. The Court has observed that the plain-error exception "is to be 'used sparingly.' " *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). "Any unwarranted extension of this exacting definition of plain error would skew the Rule's 'careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly addressed.' " *Id.* (quoting *Frady*, 456 U.S. at 163, 102 S.Ct. 1584).

Our review of the record indicates that the allegedly erroneous standard of care was not limited to the disputed jury instruction and special verdict question; rather, it pervaded the entire trial. Nor were appellants the only parties to rely on the common-law standard of care. Instead, BNSF itself sought to convince the jury that it was not negligent under a common-law, rather than a regulatory-compliance, standard of care.

From its opening statement to the jury, BNSF asserted that the gates at the Ferry Street crossing worked, and worked properly, on the night of the accident:

> This unfortunate accident happened as a result of the inexcusable conduct of a 19–year–old young man who disregarded the flashing lights and the down crossing gate, who disregarded the oncoming train with the whistle sounding and the lights flashing and drove around a fully-lowered crossing gate in front of the train.... [T]he evidence will show [ ] that this state-of-the-art BNSF signal system provided proper and adequate warning and was working as intended [on] September 26, 2003.

During the course of the trial, BNSF introduced testimony from experts and BNSF employees to establish the amount of warning provided to motorists by the automated signal system at the Ferry Street crossing. BNSF also introduced testimony from the train's engineer that the Cavalier had driven around the lowered crossing gate and into the path of the train. In closing argument, BNSF's counsel reiterated the point:

> We heard during the course of this trial this unfortunate accident happened as a result of the inexcusable conduct of the driver of the Cavalier, who drove around the fully-lowered crossing gate in the face of the lights flashing, the bells sounding at this crossing.... [T]he evidence has now established that the state-of-the-art BNSF signal system that was in place at the Ferry Street crossing provided 31 seconds of warning in advance of the train's arrival at the crossing, and that gate arm was down for 20 seconds and remained down until the train occupied the crossing.

But under the standard of care that BNSF raises here, whether the crossing gate actually lowered before the accident is irrelevant. Rather, the critical factual determination for the jury, under that standard of care, is whether BNSF fully complied with all relevant federal regulations, non-conflicting state laws, and its own internal standards. *See* 49 U.S.C. § 20106(b). Indeed, BNSF argues in its brief to our court: "Fault cannot be found if BNSF abided by the [applicable federal] regulations, even if the signals inexplicably failed."

BNSF contends its "inadvertent failure to object, pre-deliberation, to the erroneous instruction" on common-law negligence was a simple mistake. *See* Minn. R. Civ. P. 51.03(a) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the

grounds of the objection."); *id.* 51.03(b) (requiring that an objection to a jury instruction be made before the jury is instructed).

We cannot agree that BNSF's counsel simply failed to object to the jury instruction applying a common-law negligence standard. Rather, the record before us indicates that BNSF litigated the case on one theory—common-law negligence— while at the same time attempting to preserve its right to a new trial on another theory—regulatory compliance. BNSF's answer to the complaint never asserted that its duty of care was limited to compliance with federal regulations. Rather, BNSF's answer asserted that it had "fully complied with the standard of care expected of similar railroads operating under similar circumstances." BNSF never sought summary judgment on the basis that its compliance with federal regulations was sufficient to satisfy its duty of care, regardless of whether the crossing gates in fact operated as required on the night of the accident. Rather, BNSF argued there was no genuine issue of material fact because the crossing gates had in fact operated on the night of the accident. BNSF did not propose jury instructions or a special verdict form that would have required the jury to find whether BNSF had complied with the relevant federal regulations. Rather, BNSF urged the jury to answer "no" to the question of whether BNSF was negligent because "[t]he overwhelming evidence establishes that the BNSF Railway provided a safe grade crossing, and there was nothing that they did that caused or contributed to this accident." Yet BNSF made a motion for judgment as a matter of law that argued, in part, that the plaintiffs' claims were preempted because "the railroad ha[d] fully complied with all inspection, maintenance and testing requirements under federal law," immediately after the jury retired to deliberate using a common-law negligence standard.

Accordingly, a reversal of the verdict here would allow a party to choose to try a case on one theory while holding a second theory in reserve for a possible appeal. Granting BNSF a new trial on liability after it knowingly tried the case under (what we have assumed, but not determined, to be) the wrong standard of care does not accord with notions of fairness or ensure integrity in judicial proceedings. Indeed, reversal of the jury's verdict for this assumed error—after a six-week trial during which BNSF defended on the basis of common-law negligence—would adversely impact the integrity of the judicial proceedings. We conclude that even if the instructions to the jury and special verdict form in this case were erroneous, even if the error was invited, even if invited error is reviewed as plain error, and even if the error substantially affected BNSF's rights, the error did not affect the fairness or the integrity of the proceedings. We therefore reverse the court of appeals and affirm the district court's denial of BNSF's motion for a new trial on the ground of an allegedly erroneous instruction on the standard of care.

## II.

As we have indicated, the court of appeals did not reach the question of whether BNSF is entitled to a new trial on three other, separate grounds, specifically, because of an allegedly erroneous adverse inference instruction to the jury, the allegedly erroneous admission of expert testimony, and newly discovered evidence. Although we could remand the matter to the court of appeals to address the balance of BNSF's new trial motion, the relevant questions have been briefed by the parties and the record is sufficient for us to decide the remaining issues. In the interest of

judicial economy, we therefore address BNSF's arguments. *See Hoffman v. N. States Power Co.*, 764 N.W.2d 34, 48 (Minn.2009) (addressing in the interest of judicial economy a question not reached by the court of appeals).

■ Under Minn. R. Civ. P. 59.01, a new trial may be granted on several grounds, including "[e]rrors of law occurring at the trial, and objected to at the time" and "[m]aterial evidence newly discovered, which with reasonable diligence could not have been found and produced at the trial." Minn. R. Civ. P. 59.01(f), (d). The decision to deny a motion for a new trial rests in the discretion of the district court, and we will reverse that decision only for a clear abuse of that discretion. *Moorhead Econ. Dev. Auth.*, 789 N.W.2d at 892.

### A.

■ In February 2008, in advance of trial, appellants sought sanctions against BNSF for spoliation of evidence, specifically, BNSF's failure to preserve the original computer hard drive to which a BNSF employee downloaded data from the signal event recorder system at the Ferry Street crossing on the night of the accident; failure to preserve a write-protected disk to which the data from the computer hard drive was copied; destruction of blueprints of the electronic circuitry of the crossing's warning signals; and failure to preserve a tape from the event recorder in the trailing locomotive of the train involved in the accident. Appellants sought to have evidence related to the spoliated evidence excluded. With respect to the missing blueprints and the tape from the trailing locomotive, appellants also sought an instruction to the jury on spoliation of evidence. In May 2008, the district court granted appellants' motion with respect to the missing blueprints, ruling that appellants

> will be entitled to an adverse inference instruction regarding the failure of BNSF to preserve the original signal system drawings that were in the signal cabinet on the evening of September 25, 2003. [Appellants'] counsel will not be allowed to speculate as to the content of notations that may have been on the original drawings. [Appellants'] counsel can inquire and argue about the inability to confirm the existence of any notations on the drawings because of conduct on the part of BNSF.

After the close of evidence, the court instructed the jury as follows:

> In this case, the Court has determined that defendant BNSF has failed to preserve some of the original evidence, for example, the blueprints of the crossing circuitry, and that this evidence should have been preserved. You are permitted to infer from this fact that the contents of the missing blueprints of the crossing circuitry, if produced, would have been favorable to the plaintiffs and unfavorable to BNSF.

In its motion for a new trial, BNSF argued that by labeling the missing blueprints as an "example" of BNSF's failure to preserve evidence, the instruction "unjustifiably expanded the inference that could be drawn" to BNSF's "severe detriment." The district court denied BNSF's motion for a new trial based on the spoliation instruction, noting admissions by BNSF's counsel that the railroad had " 'bungled' evidence, engaged in 'sloppy evidentiary maintenance and preservation,' and that 'there has been [a] clear and convincing showing of negligence.' "

■ A district court has considerable latitude in the choice of language used in jury instructions, and we do not reverse "simply because a litigant preferred to use

other language." *Gardner v. Coca–Cola Bottling Co. of Minn.,* 267 Minn. 505, 512, 127 N.W.2d 557, 562 (1964). Given counsel's concession that BNSF had engaged in "sloppy evidentiary maintenance and preservation," the district court did not exceed its permissible latitude in describing the missing blueprints as an "example" of BNSF's failure to preserve some of the original evidence in the case. Moreover, the jury was specifically instructed that it could draw an adverse inference from only BNSF's failure to produce the blueprints. We presume that juries follow the instructions they are given. *See, e.g., State v. Edwards,* 269 Minn. 343, 350, 130 N.W.2d 623, 627 (1964). We therefore affirm the district court's denial of BNSF's motion for a new trial based on the adverse-inference instruction to the jury.

**B.**

■ BNSF also sought a new trial on the ground that it had been "ambushed" by appellants' late disclosure of Officer Ken Drevnick as a witness. Although Sergeant Drevnick was not listed by appellants on their initial list of potential witnesses, he was added to appellants' list shortly before trial. But Sergeant Drevnick was listed by BNSF on its own list of potential witnesses, undermining any claim that BNSF was "ambushed" by his appearance as a witness at trial. We therefore affirm the district court's denial of BNSF's motion for a new trial based on the addition of Sergeant Drevnick to appellants' witness list.

■ In addition, BNSF sought a new trial on the ground that Sergeant Drevnick was improperly permitted to offer expert opinions, although he had not been disclosed by appellants before trial as an expert witness. The district court has broad discretion in ruling on evidentiary matters. *Peterson v. BASF Corp.,* 711

N.W.2d 470, 482–83 (Minn.2006) (quoting *State v. Steward,* 645 N.W.2d 115, 120 (Minn.2002)).

As a member of the Minnesota State Patrol's accident reconstruction team, Sergeant Drevnick photographed the accident scene. He was also present at the accident site a few days later, when the State Patrol brought an exemplar car to the crossing in an attempt to duplicate the skid and scuff marks left by the accident. Further, Sergeant Drevnick testified that he was consulted by the chief author of the State Patrol's accident report for help in mapping the location of the debris field and other data found at the scene.

The district court limited the scope of Sergeant Drevnick's testimony to "what he did in this investigation behind the scenes, on the scenes." Because he had expertise in accident reconstruction, the court further ruled, "to the extent [Sergeant Drevnick] has an opinion based on what he has reviewed that may be different from the physical evidence, he should be allowed to explain that." But the court barred appellants from asking Sergeant Drevnick to critique the work of other experts or the State Patrol report on the accident.

On examination by appellants' counsel, Sergeant Drevnick testified that his initial reaction to the crash scene evidence was to put the decedents' car in the southbound lane—the direction in which they were traveling—at the moment of impact, meaning that the crossing gate had not activated. But on cross-examination by counsel for BNSF, Sergeant Drevnick testified that the State Patrol's theory of the accident—that the decedents drove around the crossing gate—was in fact his idea.

Sergeant Drevnick testified that in investigating the crash he assumed that if a crossing gate malfunctioned, the crossing arm would automatically drop down until it

was repaired. Sergeant Drevnick also testified that he relied, in part, on that assumption—that a malfunctioning crossing arm would automatically drop down—in accepting as fact during the State Patrol's investigation that the Ferry Street crossing gate was down at the time of the accident. Nor, Sergeant Drevnick testified, was he aware during the State Patrol investigation of allegations that the crossing gates at Ferry Street had failed to activate on other occasions before the September 2003 accident. But Sergeant Drevnick testified that, confronted again with the same scuff and skid marks found at the scene of this accident, he would again begin with the belief that the decedents' car was in the southbound lane at the moment of impact.

Considering the limitations placed by the district court on his testimony, we conclude that the district court was within its discretion in admitting Sergeant Drevnick's testimony. Based on our review of the transcript, we further conclude that Sergeant Drevnick's testimony did not exceed the limits imposed by the district court.

## C.

■■■ Finally, BNSF sought a new trial under Minn. R. Civ. P. 60.02(b) on the ground of newly discovered evidence. To warrant a new trial, the moving party must show that the new evidence was not discovered until after trial, and could not have been discovered before trial "by the exercise of reasonable diligence." *Vasatka v. Matsch,* 216 Minn. 530, 535, 13 N.W.2d 483, 486 (1944). Moreover, to warrant a new trial the newly discovered evidence must be relevant and admissible. *Brown*

*v. Bertrand,* 254 Minn. 175, 180, 94 N.W.2d 543, 548 (1959). Finally, the newly discovered evidence "must not be merely collateral, impeaching, or cumulative, but rather, must be such as to have a probable effect upon the result of a new trial." *Gruenhagen v. Larson,* 310 Minn. 454, 459, 246 N.W.2d 565, 569 (1976). As we noted in *Gruenhagen,* the "determination [of whether all named factors have been met] is within the trial judge's discretion." *Id.,* 246 N.W.2d at 569.

BNSF's motion for new trial on the basis of newly discovered evidence relied on the putative testimony of three individuals.[3] BNSF claimed that one of these individuals drove "one of the last vehicles through the [Ferry Street] crossing before the train came shortly after 10:00 p.m. that evening" and saw "the gates and lights working properly." This witness was paid $5,000 by the law firm that represented BNSF during the trial. BNSF claimed that the other two individuals, an off-duty Coon Rapids police officer and his wife, also saw the crossing lights coming on and the warning bell sounding as they went through the Ferry Street crossing around 10:00 p.m. on the night of the accident. But neither the officer nor his wife reported seeing a train approaching the Ferry Street crossing as the signals activated. Once through the crossing, the off-duty officer and his wife claimed to have then passed a car going in the other direction, toward the crossing, but could not identify the make, model, or color of the car, or the number of its occupants.

The district court denied BNSF's motion for a new trial because none of these witnesses actually saw the gate fully lowered or the accident itself. According to the

3. BNSF initially sought a new trial on the basis of the testimony of a fourth individual, who was paid $10,000 by the law firm that represented BNSF during the trial and who also claimed to have seen the signals at the Ferry Street crossing operating shortly before the accident. BNSF withdrew that individual's testimony.

district court, testimony that the lights at the crossing were activated did not discredit appellants' theory that the crossing gate malfunctioned intermittently. In addition, the off-duty police officer responded to the accident scene the following morning and was one of two officers to inform one of the appellants of the accident. The court concluded that the identity of the officer could have been discovered by BNSF before trial. We conclude that the district court acted within its discretion in denying BNSF's motion for a new trial on the basis of newly discovered evidence.

We therefore reverse the court of appeals' grant of a new trial on the ground of an error in the instructions to the jury on BNSF's duty of care, and affirm the district court's denial of a new trial on grounds of an erroneous adverse-inference instruction, admission of testimony, and newly discovered evidence.

Reversed.