*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0673**

In re the Estate of: Harold E. Farnes, a/k/a
Harold Farnes and Harold Ellwood Farnes, Deceased.

**Filed February 8, 2016
Affirmed
Halbrooks, Judge**

Carver County District Court
File No. 10-PR-13-84

Thomas H. Boyd, Thomas A. Walker, Winthrop & Weinstine, P.A., Minneapolis, Minnesota; and

Eric C. Dammeyer, Dammeyer Law Firm, P.A., Eden Prairie, Minnesota (for appellant Dr. Stephen Farnes)

James H. Gilbert, Beverly J. Aho, Jody E. Nahlovsky, Adam L. Sienkowski, James H. Gilbert Law Group, PLLC, Eden Prairie, Minnesota (for respondent Nancy Farnes)

Racheal M. Holland, Melchert Hubert Sjodin, PLLP, Waconia, Minnesota (for respondent Patty Farnes)

Hon. Bruce Kruger (ret.), c/o Lindquist & Vennum LLP, Minneapolis, Minnesota (personal representative)

Peggy Marrin, Duluth, Minnesota (pro se respondent)

Annabelle McCullough, Bismarck, North Dakota (pro se respondent)

Katherine M. Condon, Litchfield, Minnesota (pro se respondent)

Hannah Rose Marrin, Duluth, Minnesota (pro se respondent)

Abbigail Warnke, St. Cloud, Minnesota (pro se respondent)

Brent Carr, Excelsior, Minnesota (pro se respondent)

Considered and decided by Halbrooks, Presiding Judge; Stauber, Judge; and Reyes, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges the district court's denial of his motion for an order determining the stipulation to dismiss his objection to the probate of his father's will to be non-binding and to permit him to re-assert his objection with supplemental pleadings. We affirm.

## FACTS

Harold Farnes was born on January 16, 1926, in Blue Earth and died on May 15, 2013. He is survived by his wife, respondent Patty Farnes. During Harold's life, he had four children from a previous marriage: respondents Peggy Marrin and Nancy Farnes; appellant Stephen Farnes; and Molly Lundquist, who preceded Harold in death. Lundquist is survived by her four children: respondents Katherine Condon, Abbigail Warnke, Brent Carr, and Annabelle McCullough.

Patty petitioned for formal probate of Harold's will that was executed on July 23, 2004. In that will, Harold devised his farm, valued at $885,000, to his wife for life and then to his three daughters but specifically omitted his son, Stephen, from receiving this property. Harold's 2004 will, after providing a life estate for Patty, divided the remainder

2

of his assets in equal amounts to all four children, per stirpes.[1]  Stephen objected to the probate of the 2004 will on the ground that it was obtained by undue influence when Harold was a vulnerable adult who was mentally incapacitated.  Nancy also objected to the probate of the will based on her belief that there were defects in the 2004 will and that the personal representative requested by Patty had a conflict of interest.

Stephen was scheduled to be deposed on October 30, 2014—approximately three weeks before the November 24, 2014 trial.  Before proceeding with the deposition, Stephen, Nancy, and Patty reached a stipulated agreement that was recorded stenographically on October 30.  As part of the stipulation, Stephen and Nancy consented to withdraw their objections to probating Harold's 2004 will.  All three agreed not to object to the payment of each other's attorney fees by the estate.  Patty agreed to clarify that she did not have any power of appointment over the property devised to her or power to dispose of the principal of that property "now or upon her death."  Further, all three agreed that an institutional trustee would be selected to administer the estate according to the terms of the 2004 will.  Prior to any major actions, the trustee was to poll Stephen, Nancy, Peggy, and Patty to obtain unanimous consent.  If they did not unanimously consent, the trustee was to seek relief in district court. Nancy was given a 30-day right of first refusal for the sale of anything devised to Patty from the marital trust.  The three agreed to make a good-faith effort to ensure that the farm was titled to the estate, and Stephen agreed to acknowledge that he had no claim of ownership in it.  Finally, they

---

[1] The total value of Harold's estate exceeded $4,700,000.

3

agreed to participate in a mediation session scheduled in November to settle the remaining unresolved aspects of the estate with the other parties.

The mediation session failed to produce a global agreement between all of the parties. Stephen subsequently moved the district court for an order determining that the stipulated dismissal was non-binding, to permit him to reassert his objection to probate and to file supplemental pleadings, and for a trial date. Stephen characterized his motion as one brought under Minn. R. Civ. P. 60.02 based on newly discovered evidence that allegedly came to light only after he agreed to the stipulation. Stephen described the newly discovered evidence as (1) a document dated March 1999 purportedly written by Harold, (2) a deed to Patty described in the March 1999 document, (3) a deed from Patty to all four children described in the March 1999 document, and (4) a 2003 deed transferring the farm to Peggy. Stephen asserted that the documents supported his argument that Harold lacked testamentary capacity when he signed the 2004 will.

Nancy and Patty opposed Stephen's rule 60.02 motion, arguing that the March 1999 document, by its terms, was not meant to be anything other than a guide, was unsigned, and predated Harold's 2004 will by five years. Therefore, they contended that the document was irrelevant, inadmissible, and collateral, making the granting of a Minn. R. Civ. P. 60.02 motion for relief from a judgment unwarranted. Nancy and Patty further noted that none of the three deeds had been produced and that even if the documents existed and were relevant, admissible, and not collateral, Stephen had failed to act with due diligence to obtain them.

4

The district court denied Stephen's motion. Analyzing the motion under Minn. R. Civ. P. 60.02(b), the district court noted that Stephen had to demonstrate that (1) he exercised reasonable diligence; (2) the newly discovered evidence was relevant and admissible; and (3) it was not merely collateral, impeaching, or cumulative, such that it would have a probable effect upon the result of a trial.

The district court found that Stephen did not provide credible evidence to establish the existence of the two deeds referenced in the March 1999 document or the 2003 deed and that Stephen did not exercise reasonable diligence in discovering the alleged documents because, although Stephen knew that his father kept files in his personal office, he did not request access to them. The district court further found that Stephen failed to establish an adequate foundation for the admissibility of the March 1999 document because the document concludes with the unwitnessed typewritten word "Dad," and Stephen failed to provide an affidavit detailing where and when he discovered it. Finally, the district court found that, even if admissible, the March 1999 document, by its terms, would have no probable effect on the outcome of a trial as it was meant as Harold's guide and predates the 2004 will that explicitly revokes all prior wills and codicils. This appeal follows.

## D E C I S I O N

### I.

Stephen argues that the district court abused its discretion when it denied his rule 60.02 motion. "The decision to vacate judgment under rule 60.02 rests within the district court's discretion and will not be reversed absent an abuse of that discretion." *Meyer v.*

5

*Best W. Seville Plaza Hotel*, 562 N.W.2d 690, 694 (Minn. App. 1997), *review denied* (Minn. June 26, 1997). "[W]e review the district court's factual findings for clear error. That is, we examine the record to see if there is reasonable evidence in the record to support the court's findings." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotations and citations omitted). The district court may relieve a party from a final judgment based on newly discovered evidence. Minn. R. Civ. P. 60.02(b). To warrant a new trial under rule 60.02, "the moving party must show that the new evidence was not discovered until after trial, and could not have been discovered before trial by the exercise of reasonable diligence." *Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 631 (Minn. 2012) (quotation omitted). The evidence "must not be merely collateral, impeaching, or cumulative, but rather, must be such as to have a probable effect upon the result of a new trial." *Id.* (quotation omitted). Finally, the newly discovered evidence must be relevant and admissible. *Id.* If a party fails to prove any of the required factors for newly discovered evidence, then rule 60.02 relief is inappropriate. *Id.*

In order to establish the exercise of reasonable diligence, a party must show that he employed "reasonable investigation efforts to find and produce the evidence." *Turner v. Suggs*, 653 N.W.2d 458, 467 (Minn. App. 2002) (quotation omitted). Reasonable diligence "requires the use of available discovery tools." *Regents of Univ. of Minn. v. Med. Inc.*, 405 N.W.2d 474, 479 (Minn. App. 1987). Stephen argues that he exercised reasonable diligence with respect to the March 1999 document by serving written

6

discovery requests that required Patty to produce it. The discovery request that Stephen relies on states:

> All documents which are records of any kind, whether written or printed or electronically stored, including but not limited to documents, correspondence, journal or diary entries regarding the will of Harold E. Farnes, dated July 23, 2004; the will of Harold E. Farnes, dated August 14, 1997; as well as any other will or codicil, trust or trust amendment, of Harold E. Farnes.

The district court disagreed, finding that the scope of the discovery request did not encompass the document. The first statement in the typed document entitled FINANCIAL March 1999 provides: "As a sort of summary of what and where, I am setting out the following. It may be somewhat disjointed, repetitious etc., but it is not meant to be anything other than a guide, that I add to from time to time." The document is not signed or witnessed, nor does it state any intention to replace Harold's 1997 will. It is not a will, codicil, trust, or trust amendment. We conclude that the district court properly exercised its discretion when it decided that Stephen failed to exercise reasonable diligence in obtaining the alleged newly discovered evidence. Stephen's failure to exercise reasonable diligence, one of the required factors for newly discovered evidence, is sufficient to affirm the district court's denial of rule 60.02 relief. *See Frazier*, 811 N.W.2d at 631.

Even if Stephen had shown that he exercised reasonable diligence to obtain the documents, he also has to demonstrate that the documents would have a probable effect on the result at trial. *See id.* Stephen's objection to the probate of the 2004 will is that it is invalid because of undue influence. He argued in his reply memorandum to the district

7

court that the three deeds and March 1999 document are relevant for two reasons: (1) they contradicted Patty's testimony given during her deposition and (2) they demonstrate that the 2004 will was a sudden or unexplained change in a "fixed and determined purpose."

At the outset, we note that newly discovered evidence offered for impeachment purposes does not meet the probable-effect factor. *Frazier*, 811 N.W.2d at 631. In addition, Stephen never produced the three deeds that he alleges exist. It was therefore proper for the district court to refuse to speculate as to the contents of those deeds or the effect they would have on the result at trial.

The only document Stephen produced was the one dated March 1999. The language in that document states that all four of Harold's children were to receive the farm. But the document was drafted years before Harold's 2004 will was executed. Even if the March 1999 document was a reliable source of Harold's intent in March 1999, it would not negate the argument that Harold's intent changed at some point between 1999 and 2004 when he executed his second will. And the record addresses Harold's changed intent. On December 9, 2002, Harold wrote a letter to his attorney, stating in part, "The value of the farm is way up. I was to receive half the proceeds of the Island sale – about $440,000, but instead Steve keeps it and I eliminate his share of the farm and give it to the girls."

On January 11, 2003, Harold wrote a letter to his lawyer to clarify how he wished his property to be distributed in his 2004 will, stating:

> Subject to the personal lifetime easement to Patty, the Farm will go to Nancy, Molly, and Peggy . . . . Steve is not included as he received all of the Deering Island proceeds, half of which were to be mine.

Further, the record contains a letter that Harold wrote to Molly in 2005 to inform her that

> the distribution to my children is as equal as I can figure, whether anyone feels it is or not, as it takes into consideration assets distributed during my lifetime, as well as some benefits being withheld. It is mine to determine, and I have done so. If anyone feels differently, I am sorry, but that is the way I see it, and it is final.

Harold's 2004 will explicitly revoked all former wills and codicils. As the district court stated, "It is a truism that a decedent has the right to, and often does, change the terms of his/her estate plan/will." The fact that Harold changed his mind about the farm is well-explained by this record. The district court properly determined that Stephen failed to show that the March 1999 document would have a probable effect on the outcome of a trial.

Finally, even if Stephen could show he exercised reasonable diligence and that the documents would have a probable effect on the outcome of a trial, he has to demonstrate that the documents are admissible. In order for a document to be admissible, it must be authenticated. *See* Minn. R. Evid. 901(a). "The evidentiary requirement for authentication as a condition precedent to admissibility is met only if the evidence is 'sufficient to support a finding that the matter in question is what its proponent claims.'" *In re Welfare of S.A.M.*, 570 N.W.2d 162, 164 (Minn. App. 1997) (quoting Minn. R. Evid. 901(a)). The district court found that the March 1999 document lacked the

requisite foundation because it has the typewritten word "Dad" at the end of it with no other indication that Harold drafted it. The district court also found that Stephen failed to establish, by means of an affidavit or otherwise, how he obtained the March 1999 document. Further, as the district court noted, Stephen failed to present credible evidence to establish the existence of any of the three deeds.

Because Stephen failed to prove to the district court that he had obtained newly discovered evidence that satisfied the rule 60.02 requirements, the district court properly denied his motion.

## II.

Stephen argues that the stipulation was made without prejudice under Minn. R. Civ. P. 41.01(a) because it did not expressly state that it was with prejudice. A plaintiff may dismiss a case without order of the court "by filing a notice of dismissal" or "by filing a stipulation of dismissal signed by all parties who have appeared in the action." Minn. R. Civ. P. 41.01(a). Stephen, however, is not the plaintiff in this action, and he did not file either a notice of dismissal or a stipulation of dismissal signed by all parties. Thus, the language Stephen relies on from rule 41.01(a)—which states, "Unless otherwise stated in the notice of dismissal or stipulation the dismissal is without prejudice"—is inapplicable, and the district court properly refused to rely on it.

## III.

As an alternative argument, Stephen contends that the stipulation should not be binding on him because the parties' agreement does not satisfy Minn. Stat. § 524.3-1102 (2014). Nancy and Patty assert that this argument is waived on appeal because Stephen

10

failed to present it to the district court. Addressing the merits of the argument, Nancy and Patty assert that the statute is inapplicable to this matter.

"A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (quotation omitted). Further, appellate courts "will not consider the applicability of [a legal theory] on appeal, even though the question was raised below, if it was not passed on by the [district] court." *Id.* (quotation omitted). We do not generally consider arguments that are only mentioned in passing and are not developed for the district court. *Schmidt v. City of Columbia Heights*, 696 N.W.2d 413, 416 (Minn. App. 2005).

Stephen characterized his motion to the district court as one based on Minn. R. Civ. P. 60.02 and focused his argument on the purported newly discovered evidence. In his memorandum in support of the motion, Stephen referred once to Minn. Stat. § 524.3-1102 in the factual recitation:

> Furthermore, on November 10, 2014, the undersigned pointed out [that the stipulation was non-binding] in an email to opposing counsel. . . . In that email, the undersigned highlighted that the Stipulation could not be binding until the Court made it official and that no global agreement could be made without unanimous consent by all interested parties to the estate under Minn. Stat. § 524.3-1102 . . . .

In the conclusion of his memorandum, Stephen stated that "[t]he solution to this morass is found in MRCP Rules 41.01 and 60.02." In his reply memorandum, Stephen reiterated that his motion was based on Minn. R. Civ. P. 60.02 and Minn. R. Civ. P. 41.01. There was no reference to Minn. Stat. § 524.3-1102. At the motion hearing,

Stephen referred to the statute in his argument that the "written [global settlement] agreement has not happened."  Stephen's theory based on Minn. Stat. § 524.3-1102 was never asserted or developed in the district court.  Based on this record, we conclude that Stephen failed to properly preserve this argument for appeal.

But even if the argument is not waived, we agree with Nancy and Patty that Minn. Stat. § 524.3-1102 is inapplicable to the stipulation.  We review questions of law de novo.  *See Modrow v. JP Foodservice, Inc.*, 656 N.W.2d 389, 393 (Minn. 2003) ("No deference is given to a lower court on questions of law.").

Minn. Stat. § 524.3-1101 (2012) provides:

> A compromise of any controversy as to admission to probate of any instrument offered for formal probate as the will of a decedent, the construction, validity, or effect of any probated will, . . . if approved in a formal proceeding in the court for that purpose, is binding on all the parties thereto including those unborn, unascertained or who could not be located.  An approved compromise is binding even though it may affect a trust or an inalienable interest.

Minn. Stat. § 524.3-1102 states:

> The procedure for securing court approval of a compromise is as follows:
> (1) The terms of the compromise shall be set forth in an agreement in writing which shall be executed by all competent persons . . . having beneficial interests or having claims which will or may be affected by the compromise. . . .
> (2) Any interested person . . . then may submit the agreement to the court for its approval and for execution by the personal representative . . . .
> (3) After notice to all interested persons or their representatives, . . . the court, if it finds that the contest or controversy is in good faith and that the effect of the agreement upon the interests of persons represented by fiduciaries or other representatives is just and reasonable,

12

> shall make an order approving the agreement and directing all fiduciaries under its supervision to execute the agreement. . . . Upon the making of the order and the execution of the agreement, all further disposition of the estate is in accordance with the terms of the agreement.

Stephen relies on *In re Estate of Sullivan*, 724 N.W.2d 532, 535 (Minn. App. 2006), to argue that the requirements of Minn. Stat. § 524.3-1102 must be strictly construed and that any agreement that does not satisfy the statutory requirements is null and void. But *Sullivan* is distinguishable from this case. In *Sullivan*, the district court accepted an agreement for all of the beneficiaries despite the fact that one of them did not sign or agree to it. 724 N.W.2d at 534. The accepted agreement then governed the distribution of the decedent's assets. *Id.* This court concluded that the district court erred by accepting an agreement between all of the beneficiaries in contradiction of the requirements in Minn. Stat. § 524.3-1102. *Id.* at 536.

Here, the district court did not accept an agreement between all of the beneficiaries that was intended to govern the distribution of all of the assets. The stipulation between Stephen, Nancy, and Patty addressed some, but not all, potential issues related to the probate of Harold's estate. It did not govern the distribution of the entire estate. Subsequently, all of the interested parties unsuccessfully attempted to reach a global agreement that would have potentially triggered application of Minn. Stat. § 524.3-1102. But that failure of all of the interested parties to reach a global agreement does not nullify the stipulation made in resolution of some of the issues between Stephen, Nancy, and Patty. Therefore, the stipulation is not governed by Minn. Stat. § 524.3-1102.

## IV.

Stephen argues that he should not be bound by the stipulation because there were conditions precedent to it that did not occur. But a party may not "obtain review by raising the same general issue litigated [to the district court] but under a different theory." *Thiele*, 425 N.W.2d at 582. Because Stephen did not base his argument to the district court on a contract theory and the district court did not have an opportunity to address it, we do not consider this theory on appeal.

**Affirmed.**