Renae RULLMAN, Appellant,

v.

Helen FISHER, Defendant and Third Party Plaintiff, Respondent,

v.

Stacey GREENE, Third Party Defendant.

No. CO–85–423.

Court of Appeals of Minnesota.

July 23, 1985.

Fred H. Pritzker, Michael C. Snyder, Meshbesher, Singer & Spence, Minneapolis, for appellant.

James F. Dunn, Dani Shimon, James F. Dunn & Associates, St. Paul, for respondent.

Heard, considered and decided by LANSING, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

LANSING, Judge.

Appellant Renae Rullman sustained serious injuries when she was criminally assaulted on premises owned by respondent

Helen Fisher and leased to third-party defendant Stacey Greene. Rullman appeals a summary judgment in favor of Fisher. We affirm.

## FACTS

Helen Fisher owns a three-story building located at 117 North Washington Avenue in Minneapolis. The first floor is leased to a commercial sauna and massage parlor, and the second and third floors are each studio/loft apartments. Third-party defendant Stacey Greene and two roommates leased the second floor. Before the loft tenants moved in, the entire building was commercial. The loft tenants received $2,000 grants through the Artspace Reuse Project to renovate the lofts into usable art studio and living space and also received a reduction in rent in return for their labor. At the time of the assault the renovation had just begun.

The building entrance, facing Washington Avenue, is not locked and opens into a small vestibule. Inside the vestibule one door opens into the sauna and another onto a stairway leading up to the lofts. A door on the second floor opens off the stairway into Greene's loft, and the stairway continues up to the third floor.

On January 1, 1981, appellant Renae Rullman attended an impromptu New Year's Eve party in Greene's loft apartment. Because the building had no intercom or buzzer system, guests entered by knocking on the door at the bottom of the stairway and waiting for someone to walk down the stairs to open the door. The deposition testimony varied on the type of door and lock but was consistent that the door did not lock automatically upon closing. The depositions were also conflicting as to whether the door at the top of the stairs could be effectively locked. In the early evening Greene followed departing guests down the stairs to make sure the door was locked because she worried about security, particularly the "sauna situation." She states that she became "frustrated," however, because guests "were always going in and out," and she stopped checking

the door. Rullman arrived with a group of friends shortly after midnight.

Greene stated in a deposition that she recognized everyone at the party except for one man. Rullman said she did not know the man either, but "[h]e was there mingling, like everybody else," and she assumed he was a guest. Greene said that even though he was a stranger she thought at the time, "it's New Year's Eve, if he's okay, then we'll welcome him." She stated that the unknown man was not doing anything improper,

> otherwise he would have been out of there. Anybody who I would feel wasn't behaving properly would be told to leave, and that was something I had run over in my mind. Well, I thought he seems okay * * * and there were plenty of men there * * * big guys. I just felt completely safe.

None of the other guests knew the man or how he had come to the party.

Rullman danced with the man and introduced him to Greene as "Leon." When she went to use the bathroom, located at the back of the loft away from the area of the party, the man followed her, pushed her into the bathroom, beat her, broke her jaw, and sexually assaulted her. Another guest interrupted the attack, but the man fled and was never apprehended or identified.

Rullman brought this personal injury action, contending that Fisher was negligent in failing to maintain reasonable security and security devices in the building.

## ISSUES

Did the trial court err in granting summary judgment on the issue of Fisher's alleged failure to provide adequate security?

## ANALYSIS

Rullman contends that summary judgment was improper because Fisher was negligent in failing to provide a dead-bolt lock on Greene's apartment and a doorbell or buzzer system for the building. *See,*

*e.g., Trentacost v. Brussel,* 87 N.J. 214, 412 A.2d 436 (1980).

The Minnesota Supreme Court has recognized, in some cases, a landlord's liability for criminal actions of a third person. *See Ponticas v. K.M.S. Investments,* 331 N.W.2d 907 (Minn.1983) (landlord was liable under a negligent hiring theory when a resident manager with a history of criminal convictions used a passkey to enter a female tenant's apartment and rape her); *Vermes v. American District Telegraph Co.,* 312 Minn. 33, 251 N.W.2d 101 (Minn. 1977) (in a suit for damages from a burglary, the court found the lessor of commercial space had a duty to point out facts about the premises that would tend to make them insecure for operation of a jewelry store).

■ The general rule that a third person's criminal act is an intervening efficient cause breaking the chain of causation, *see Anderson v. Theisen,* 231 Minn. 369, 43 N.W.2d 272 (1950), is not applicable when the criminal act is reasonably foreseeable, *see Hilligoss v. Cross Cos.,* 304 Minn. 546, 228 N.W.2d 585 (1975). Rullman argues that the assault was reasonably foreseeable because of the commercial and warehouse character of the neighborhood and because of past criminal activity at the first-floor sauna.

■ Even assuming that Fisher should have reasonably foreseen a sexual assault on tenants or guests, Rullman's claim founders when analyzed in terms of actual causation. On the issue of causation, the plaintiff must produce evidence

> which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

W. Prosser, Handbook of the Law of Torts § 41, at 241 (4th ed. 1971) (footnotes omitted).

■ In this case it is undisputed that Greene intentionally allowed the door to remain unlocked even though she was aware it was unlocked and expressed concern over security. Rullman argues that Greene's alleged negligence was not an intervening cause of the assault because the necessity of walking downstairs to admit guests and to re-lock the door after them increased the likelihood that the door would be left unlocked. Even granting an increased likelihood that the door would be left unlocked, we do not find the necessary nexus between the lack of a doorbell or buzzer system and the assault. Whether the assailant knocked and was allowed into the loft, walked in with a group, or merely wandered in through the unlocked door, it is undisputed that he was at the party for some time, mingled with guests and the host, and, although recognized as a stranger, was not questioned or asked to leave. Under these circumstances, it is merely speculation to argue that the lack of a buzzer system was a substantial factor in causing the assault.

We recognize that certain facts, including the presence or absence of a dead-bolt lock and the sturdiness of the doors, remain at issue. However, resolution of these facts is not necessary to determine the action. Summary judgment is appropriate when there is no genuine issue of material fact and either party is entitled to judgment as a matter of law. Minn.R. Civ.P. 56.03. Even viewed in the light most favorable to Rullman, the record does not show the requisite causal connection between Fisher's breach of any duty and the criminal assault.

## DECISION

Rullman presented insufficient evidence of a causal connection between Fisher's alleged negligent failure to provide adequate security and the criminal assault to raise a genuine issue of material fact.

Summary judgment was appropriate on the issue of Fisher's liability.

Affirmed.