**Steven C. PEARSON, Appellant,**

v.

**John M. HENKEMEYER, Defendant,**

**Mid–Continent Management Corporation, et al., Respondents.**

**No. C6–93–195.**

Court of Appeals of Minnesota.

July 20, 1993.

Review Denied Sept. 30, 1993.

Joseph B. Marshall, Anita J. Jehl, Marshall & Associates, P.A., Circle Pines, for appellant.

Robert A. Awsumb, Rambow & Awsumb, P.A., Bloomington, for respondents.

Considered and decided by KLAPHAKE, P.J., and FORSBERG and SCHULTZ,* JJ.

## OPINION

FORSBERG, Judge.

Appellant Steven Pearson challenges the trial court's grant of summary judgment to respondent Mid–Continent Management

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Corporation. Pearson, a police officer, claims Mid–Continent is liable for injuries he sustained while responding to a call at an apartment complex owned and managed by Mid–Continent. We disagree, and affirm.

## FACTS

On January 13, 1990, at 2:30 a.m., Pearson, a Brooklyn Park police officer, received a radio call from the police dispatch service. The call complained of loud noise coming from a party at LaBeata Villa apartment complex, which consists of 11 buildings and 264 apartment units.

Pearson and another officer, both in full uniform, arrived at apartment 208. Pearson advised the tenant that the police had received a noise complaint and that she must quiet her guests. One of the tenant's guests, John Henkemeyer,[1] confronted the officers and allegedly told them to leave. After some verbal exchanges, Henkemeyer went into the kitchen, and Pearson followed him. The dispute escalated into physical violence when Henkemeyer allegedly lunged at Pearson, threw him to the floor and landed on top of him. Pearson maintains this incident seriously and permanently injured his shoulder.

Pearson commenced this action against Henkemeyer and Mid–Continent, alleging Mid–Continent negligently performed its duty to control its tenants, including its duty to evict those tenants who disrupt the quiet enjoyment of the premises. In particular, Pearson alleged Mid–Continent failed to enforce its tenant conduct rules.

When tenants leased apartments at the LaBeata complex, they were required to enter into a lease agreement with Mid–Continent. As a condition of tenancy, they were required to adhere to Mid–Continent's standards of tenant conduct, which provide in part:

> Resident, Occupant and Guest Conduct: I, the Additional Occupants and My guests: (i) will not act in a loud, boisterous, unruly or other manner which dis-

turbs the peace and quiet of other residents, occupants or their guests.

> \* \* \* \* \* \*

> Quiet is to be observed after 10:00 pm on weekdays and 12:00 midnight on weekends. You are not only responsible for your own conduct, but the conduct of your guests as well. Please be advised that continued disturbances disregarding your neighbors' rights to privacy could result in the termination of your Rental Agreement.

Pearson also alleged the Brooklyn Park Police Department is frequently called to the LaBeata complex and therefore was on notice that violence could erupt. In support of his position, Pearson notes that between December 1, 1989, and January 13, 1990, the police received 194 calls involving the LaBeata complex; 34 of those complaints involved allegations of loud and noisy parties.

The trial court granted Mid–Continent's motion for summary judgment. Pearson appeals.

## ISSUE

Did the trial court err in granting summary judgment to Mid–Continent?

## ANALYSIS

■ On appeal from a grant of summary judgment, this court must determine if there are genuine issues of material fact and whether the trial court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). When conducting this review, we must view the evidence in a light most favorable to the nonmoving party. *Clough v. Ertz*, 442 N.W.2d 798, 801 (Minn.App.1989).

1. Pearson argues Mid–Continent had a duty to enforce the standards of conduct set forth in its lease agreements. Specifically, Pearson alleges Mid–Continent was on notice that tenants were not complying with the lease agreement's standard of conduct because of the unusual number of complaints to the Brooklyn Park Police De-

---

1. Henkemeyer was not a tenant at the LaBeata apartment complex.

partment. Pearson complained Mid–Continent

> negligently performed its duty to control the tenants of [LaBeata], including its duty to evict those tenants who disrupt the quiet enjoyment of the premises.

Failure to do so, Pearson contends, caused his injuries. We find Pearson's arguments unconvincing for two reasons.

First, we are unpersuaded that Mid–Continent actually owed Pearson any duty. A person ordinarily owes no duty to control the conduct of another unless some special relationship exists. *Leaon v. Washington County*, 397 N.W.2d 867, 873 (Minn.1986). A land-owner, however, may have a duty to protect against harm caused by third-party entrants on their land if the owner

> (a) knows or has reason to know that he has the ability to control the third person, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

*Id.* (quoting Restatement (Second) of Torts, § 318).

There was no evidence that Mid–Continent had continuing problems with this particular apartment unit. Since there are 264 apartment units at the LaBeata complex, it would be unreasonable to expect Mid–Continent to foresee physical violence at unit 208 when there was no evidence of prior problems with unit 208. Even if there were prior noise complaints or problems with unit 208, it would be unreasonable to put Mid–Continent on notice that there may be physical violence. As the trial court noted,

> [a]s a matter of law the mere existence of prior noise complaints does not create a necessity for removing tenants or taking other steps to prevent violence.

Second, we believe Pearson's claim must fail because there is no causation between Mid–Continent's alleged breach of duty to enforce its tenant conduct rules and Pearson's injuries. Generally, a third person's criminal act breaks the causation chain. *Rullman v. Fisher*, 371 N.W.2d 588, 590 (Minn.App.1985). An ex-

ception to this rule exists when the occurrence of the criminal act is reasonably foreseeable. *Id.* However, as previously noted, there is no evidence that Mid–Continent had a continuing problem with unit 208. Nor was there evidence that Mid–Continent had a problem with physical violence on its premises. Because Pearson did not produce evidence which could allow one to reasonably believe Mid–Continent's failure to strictly enforce its rules of tenant conduct was a substantial factor in Henkemeyer's assault on Pearson, the trial court's grant of summary judgment was proper. *See id.* (for guest of tenant to recover from landlord for criminal assault by third person, guest must produce evidence which affords reasonable basis for conclusion that it is more likely than not that landlord's conduct was substantial factor in bringing about injuries).

Finally, we are not persuaded by Pearson's attempt to liken this situation to cases where a store owner or a landlord has been found liable for injuries sustained by customers or tenants. *See Block v. Target Stores, Inc.*, 458 N.W.2d 705, 711–12 (Minn.App.1990) (evidence sufficient for jury to consider store's negligence when customer injured while testing skateboard because there was evidence store knew or should have known customers were trying out skateboards in display area and store could have taken steps to prevent accident), *pet. for rev. denied* (Minn. Sept. 28, 1990); *Ponticas v. KMS Investments*, 331 N.W.2d 907 (Minn.1983) (evidence supported finding that owner and operator of apartment complex were negligent in failing to make reasonable investigation of apartment manager's background; manager had criminal record involving crimes of violence, was afforded access to tenants' apartments by passkey, and subsequently raped one of the tenants in apartment after entering by using passkey). In both *Block* and *Ponticas*, there was a special relationship between the plaintiff (customer, tenant) and the defendant (store owner, landlord). Moreover, there was evidence that the type of harm sustained by the plaintiffs in *Block* and *Ponticas* was foreseeable by the defen-

dants. In contrast, there is no special relationship between Pearson and Mid–Continent which would impose a duty on Mid–Continent to protect Pearson from a physical assault. Nor was evidence presented to show that Pearson's injuries were foreseeable. Accordingly, we affirm the trial court's grant of summary judgment to Mid–Continent.

2. Pearson also argues the trial court erred in granting summary judgment because he had not completed his discovery. Specifically, Pearson complains that he was not afforded an opportunity to depose tenants who were eyewitnesses to the altercation and that he was not able to adequately depose management personnel.

 A trial court has considerable discretion in granting or denying discovery requests and, absent abuse of that discretion, the trial court will not be reversed on appeal. *Erickson v. MacArthur*, 414 N.W.2d 406, 407 (Minn.1987). The parties in this case exchanged interrogatories and other written discovery. In addition, nine depositions were taken, not including expert witnesses. The trial court granted Henkemeyer's motion to quash nine additional depositions because they were excessive. Pearson did not appeal from this order.

We believe the trial court gave Pearson ample time and opportunity to conduct discovery. We conclude the trial court's decision was well within its discretion. We therefore affirm the trial court's grant of summary judgment to Mid–Continent.

## DECISION

 In the absence of evidence of notice or foreseeability of guest's violent behavior, an apartment management company is not liable for damages to third persons caused by that guest.

**Affirmed.**