*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1751**

Ezell Moore,
individually and as trustee for the heirs of
Valerie M. VanMieghem, Decedent,
Appellant,

vs.

CenterPoint Energy Resources Corporation
d/b/a CenterPoint Energy,
Respondent,

Whirlpool Corporation,
Respondent,

Joseph Hoffman, et al.,
Respondents,

John Weber,
Respondent,

Kevin Welter,
Respondent.

**Filed August 10, 2015
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CV-12-10180

Patrick W. Michenfelder, Frederick M. Young, Gries Lenhardt Michenfelder Allen, PLLP, St. Michael, Minnesota (for appellant)

Peter G. Van Bergen, Dawn L. Gagne, Cousineau McGuire Chartered, Minneapolis, Minnesota (for respondent CenterPoint)

John D. Sear, Douglas L. Pfeifer, Bowman and Brooke, LLP, Minneapolis, Minnesota; and

George R. Neuhauser (pro hac vice), Nall & Miller, LLP, Atlanta, Georgia (for respondent Whirlpool)

Michael J. Tomsche, Tomsche Sonnesyn & Tomsche, Minneapolis, Minnesota (for respondents Hoffman, et al.)

Thomas Atmore, Leonard, O'Brien, Spencer, Gale & Sayre, Ltd., Minneapolis, Minnesota (for respondent Weber)

Kevin C. Welter, Fridley, Minnesota (pro se respondent)

Considered and decided by Ross, Presiding Judge; Cleary, Chief Judge; and Johnson, Judge.

## UNPUBLISHED OPINION

**ROSS**, Judge

This case arises from a tragic gas explosion. Valerie VanMieghem called CenterPoint Energy to report the strong odor of what she supposed was natural gas emanating from behind her Whirlpool kitchen stove. CenterPoint's representative told VanMieghem to open a window and leave the house. About ten minutes after the call, natural gas that had filled the home from an improperly installed gas line behind the stove exploded, killing VanMieghem and her housemate. VanMieghem's romantic acquaintance, Ezell Moore, sued Whirlpool Corporation and others seeking damages as trustee of VanMieghem's estate. Moore alleged, among other things, that Whirlpool negligently failed to warn VanMieghem that gas leaks cannot always be detected by smell and negligently failed to build a gas detector in or on the stove. Moore appeals the district court's summary judgment decision favoring Whirlpool. We affirm because

2

Moore presented no evidence that would support a jury finding that the alleged warning defect or design defect caused VanMieghem's fatal injuries.

## FACTS

Valerie VanMieghem began leasing her Minneapolis home in March 2011, five months after landlords Joseph and Michelle Hoffman paid contractor Kevin Welter to install a new Whirlpool gas stove in the kitchen. Four months after VanMieghem moved in, at 12:06 p.m. on July 30, 2011, she called the natural gas company, CenterPoint Energy Resources Corporation, to report an odor that she believed may have been natural gas. The CenterPoint representative instructed her to open a window and leave the home. The call ended at 12:14 p.m.

At 12:24 p.m., the gas in the house exploded, fatally burning VanMieghem and her housemate, Elizabeth Mulay. During the time between the call's end and the explosion, VanMieghem checked her cellular telephone's voicemail messages, and she telephoned someone about "cleaning work." She did not leave the house.

The fire marshal and others investigated. They found various problems with a flexible copper line that was supposed to have supplied gas to the stove. The line was looped and "totally disconnected from the connection point of the range," and it "was not properly flanged nor did it have the proper connection fittings." Additionally, "old teeth markings on [the fitting designed to connect the line to the stove] indicat[ed] the coupling was improperly installed." The fire marshal determined that gas had filled every room in the house, that the "fire was the result of an improperly installed gas connection to the . . . range located in the kitchen," and that "the range was not responsible for the . . .

3

explosion." Investigators also found that a neighbor had smelled the gas at about 10:30 the night before the explosion and again at 6:30 the morning of the explosion.

VanMieghem had a romantic relationship with Ezell Moore—the father of VanMieghem's children—who brought this wrongful-death action in his individual capacity and as trustee for VanMieghem's estate. Moore's suit names CenterPoint, Whirlpool, the Hoffmans, Welter, and a relative of the Hoffmans who sometimes performed maintenance work at the home.

This appeal concerns only Moore's four claims against Whirlpool. Moore claims that Whirlpool negligently failed to place a warning on the front of the stove where a user would see it, identifying the risks of using the range without a natural-gas detector. He also claims that Whirlpool negligently designed the range by failing to include a built-in natural-gas detector. He claims that Whirlpool breached its implied warranty that the range was fit for use with odorized natural gas. And he claims that Whirlpool's conduct constitutes deceptive trade practices, violating Minnesota Statutes section 325F.69.

After discovery, Whirlpool moved for summary judgment. The district court granted Whirlpool's motion, dismissing all of Moore's Whirlpool claims. The court concluded that Whirlpool met its duty to warn consumers and installers about installation hazards but that it had no duty to warn stove users of the installation hazards. It concluded that Whirlpool had no duty to install a gas detector on the stove. The district court dismissed Moore's breach-of-warranty claim by holding that Moore presented no evidence proving that Whirlpool's actions or omissions caused the explosion. And it

4

dismissed the claim alleging deceptive trade practices because Moore did not establish the requisite public benefit necessary for statutory standing to bring that claim.

Moore appeals.

**D E C I S I O N**

Moore challenges the district court's summary judgment decision. The district court was required to grant Whirlpool's motion for summary judgment if no genuine issue of material fact exists and Whirlpool is entitled to a judgment as a matter of law. Minn. R. Civ. P. 56.03. No genuine issue of material fact exists if a rational trier of fact, viewing the evidence in the light most favorable to the nonmoving party, could not find for the nonmoving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008). We review a district court's summary judgment decision de novo. *Finn v. Alliance Bank*, 860 N.W.2d 638, 655 (Minn. 2015). The decision is sound.

**I**

Moore argues that the district court should not have entered summary judgment on his claim that Whirlpool failed to adequately warn that odorized natural gas is not always detectable by smell and that stove users should install a gas detector. He contends that Whirlpool had a duty to place such a warning prominently on the front of the stove. The argument does not lead us to reverse.

It seems inconceivable to us that Whirlpool would have a legal duty to warn about a hazard from a gas-line blunder that allowed the explosion-causing gas to escape into the home before it ever reached the stove. But assuming without concluding that Whirlpool had a duty to warn in the substance and manner that Moore asserts, summary judgment is

5

nevertheless appropriate because Moore has not established that the failure to warn caused VanMieghem's injuries. A plaintiff claiming negligence must prove that the defendant owes a duty, that it breached that duty, that an injury occurred, and that it was the breach of duty that caused the injury. *Gradjelick v. Hance*, 646 N.W.2d 225, 230 (Minn. 2002). A defendant is entitled to summary judgment if the plaintiff offers no evidence to prove any one of these elements. *Id.* Although causation is normally a fact question, *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924–25 (Minn. 1986), a negligence claim fails as a matter of law if the evidence would not reasonably support a finding that the defendant's conduct was a substantial factor in bringing about the injury. *Rullman v. Fisher*, 371 N.W.2d 588, 590 (Minn. App. 1985). The court should reject the claim when the evidence offers merely a possibility of causation and "the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced." *Id.* (quotation omitted).

The problem with Moore's claim is that Whirlpool's failure to warn VanMieghem that one cannot always detect natural gas by smell could not have caused VanMieghem's injuries. This is because VanMieghem actually detected the odorized natural gas in her home. The undisputed evidence establishes that she called and complained to CenterPoint that she smelled an odor that "could be gas," that was "really bad" and "really lingering" and "through the whole house," and that it might be emanating from her gas dryer in her basement and also from behind her gas stove. The call was recorded:

> VanMieghem: I have this really strange smell that's been going since yesterday. It smells like it could be gas. I know it's not the stove because I have had it to where, you know,

6

I've left my stove on before and -- on the pilots, and you turn it off, and the smell is gone. But the smell is really lingering.

. . . .

VanMieghem: You know what? The smell is really in the basement.

CenterPoint: Okay.

VanMieghem: Really bad. And it's coming up through the whole house. I don't know if maybe it could be the dryer. Because it's not -- it's not our stove.

CenterPoint: Okay.

VanMieghem: Because I don't smell it -- I mean, all the burners are off on our stove.

. . . .

VanMieghem: You can smell it throughout the house. I don't see anything leaking or making any sound.

. . . .

VanMieghem: . . . Hold on. Sis?

Unidentified female: Yeah?

VanMieghem: Smell back here. Smell back behind the stove. Because it might be.

Unidentified female: Maybe.

VanMieghem: It kind of smells a little bit back behind the stove.

Moore attempts to identify a disputed fact issue by pointing to his expert witness's characterization of VanMieghem's statements. Expert witness W. Alan Bullerdiek opined that VanMieghem did not "adequately detect the presence of the natural gas leak"

7

because her statements indicate that she was not certain that the odor was gas. The argument misses the issue. The issue is whether warning VanMieghem that one cannot always detect natural gas by smell without a gas-detecting device might have altered VanMieghem's conduct and prevented her death. Warning VanMieghem that one cannot always detect natural gas by smell would not have changed VanMieghem's conduct because the warning would have informed VanMieghem of a fact she already knew. VanMieghem demonstrated that she knew that one cannot always identify natural gas by smell when she telephoned CenterPoint to report that she believed she may be smelling natural gas. Moore's proposed warning that one might not detect natural gas by smelling the odorizing agent might be relevant in a different case, one in which the injured party never noticed the odor or in which she noticed but failed to make the connection between the odor and natural gas. This is not that case.

## II

Moore maintains that Whirlpool negligently failed to include a built-in gas-detection device. The district court held that Whirlpool had no duty under the law to install a gas detector in the stove. The district court's holding seems correct, but we need not assess it on the merits for two reasons—one legal and one factual.

First, Moore does not present any argument as to why the district court erred in its legal conclusion. Moore's *entire* argument (after stating boilerplate case holdings about the general propositions of manufacturer duties) is this: "In this case, Plaintiff contends Whirlpool should have built a gas detector into the gas stove at issue . . . . Plaintiff's claims in this regard are supported by a competent expert, and, therefore, summary

8

judgment on Plaintiff's design defect claim was not appropriate." Other than this conclusory declaration that "[Moore] contends [that] Whirlpool should have built a gas detector into the gas stove at issue," Moore offers nothing. *See State Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc*., 558 N.W.2d 480, 480 (Minn. 1997) (declining to reach issues in the absence of adequate briefing). He provides no reasoning or caselaw challenging the district court's holding that Whirlpool had no duty to do what Moore says Whirlpool should have done. We deem the argument waived by lack of any reasoning or legal support.

Second, even if the alleged duty existed, Moore's claim again faces a causation difficulty. Moore does not identify any evidence tending to prove that, because VanMieghem lacked a gas detector, she did not notice the odorized natural gas. We know she *did* notice it, and we know she reported it. This defeats the causation element. And we do not think it is significant that VanMieghem was not *certain* that she was smelling gas; she was certain enough to suspect she may have been smelling gas based on the type of odor and its origination from her gas dryer and gas stove, and she was sufficiently convinced of it to call the gas utility company to report the concern and be advised what she should do about it:

> CenterPoint: All right. So, the odor could be coming from the stove; it's definitely coming [from] downstairs; you've noticed it for a couple of days, correct?
>
> VanMieghem: Yeah.
>
> . . . .

CenterPoint: Okay. Then, I'm going to give you some advisories. I want you to leave all the appliances as they are. . . . Extinguish any open flames. Do not light any matches or lighters. . . . Do not turn on or off any switches, electrical devices, including garage door openers . . . or lights. Ventilate the area. Open a window so that fresh air can come into the home. Okay?

VanMieghem: Okay.

CenterPoint: Leave the building and go to a safe location.

Moore implies that a gas detector may have informed VanMieghem about the gas sooner. But by her own account, VanMieghem had known about the suspected natural-gas odor since the day before she called CenterPoint. So even if the evidence permits the inference that a gas detector would have alerted her to the gas leak the day before she called, she was, as a matter of undisputed fact, alerted to the gas leak the day before she called even without a detector. Moore also implies that VanMieghem would have responded more vigilantly to CenterPoint's directive to leave the house if her suspicion about the presence of gas came from the device rather than from her nose. This is mere speculation, not evidence. And even if it were evidence, evidence that creates only "a metaphysical doubt as to a factual issue" and that "is not sufficiently probative . . . to permit reasonable persons to draw different conclusions" does not produce a genuine material-fact issue. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (quotation omitted). One might reasonably infer that VanMieghem would have contacted CenterPoint once she suspected natural gas in the home regardless of the means by which she suspected the gas. But no evidence supports the further inference that VanMieghem

10

would have responded differently to CenterPoint's advice depending on the means of her suspicion.

**III**

Moore claims that Whirlpool breached its implied warranty of merchantability on the stove. The implied warranty requires sellers to ensure that goods are fit for their ordinary purposes. Minn. Stat. § 336.2-314(2)(c) (2014). And a seller's implied warranty "extends to any person who may reasonably be expected to use, consume or be affected by the goods." Minn. Stat. § 336.2-318 (2014). A plaintiff may recover on a breach-of-implied-warranty claim if she can show that the warranty exists and that it was breached, causing her injury. *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 816 (Minn. App. 2010), *review denied* (Minn. Sept. 29, 2010).

Moore's claim requires no discussion. He fails to present an argument on appeal or to identify supporting legal authority. He does not specify the conduct that constitutes the alleged breach. And he points us to no evidence that he presented to the district court suggesting that the stove was unfit for its ordinary use. Based on the caselaw already provided, we do not analyze this sort of undeveloped presentation on appeal.

**IV**

Moore's final claim fails for the same reason. He asserts that Whirlpool violated the consumer-protection statute, Minnesota Statutes section 325F.69, but he does not say how this is so or defend the assertion with either factual or legal support. A seller may not fraudulently induce others to purchase merchandise. Minn. Stat. § 325F.69, subd. 1 (2014). Moore invokes the statute as a private plaintiff, recognizing that the statute is

11

generally designed for enforcement by the attorney general to benefit the general public, but he argues that the circumstances here implicate the so-called "private attorney-general" provision. This provision would allow Moore as a private plaintiff to step into the shoes of the attorney general and recover damages, costs, and attorney fees. *See* Minn. Stat. § 8.31, subds. 1, 3a (2014); *Ly v. Nystrom*, 615 N.W.2d 302, 310 (Minn. 2000). We need not decide whether Moore qualifies as a private attorney general under the statute because he does not attempt to identify the allegedly fraudulent, misleading, or deceptive practice that Whirlpool engaged in, let alone support the position with evidence.

After three paragraphs of general statements of law and case holdings concerning those misrepresentations that might support a claim under the statute, he argues only, "In this case, the conduct at issue affects everyone in the State of Minnesota using a natural gas stove. In addition, it relates to conduct that, if left unchecked, will continue to injure and kill citizens." He does not develop the argument. He does not even identify the allegedly deceptive "conduct at issue" or explain how this unspecified conduct is deceptive. He concludes the unsupported declarations with another unsupported declaration: "Plaintiff has produced evidence that Defendants have violated the Consumer Fraud Act." We could only guess what this purported "evidence" is. That is not our role, and no such evidence is apparent to us. Even if we suppose that he relies on his basic allegations about Whirlpool's failure to place its warning on the front of the appliance and about its failure to build a gas detector into the stove, neither of these allegedly *negligent* practices constitutes a *deceptive* practice.

12

The undisputed evidence in this tragedy establishes that VanMieghem smelled and accurately suspected the presence of a significant amount of natural gas in her home, that she reasonably sought the advice of her natural-gas supplier and was promptly warned to open the home and depart from it, and that, sadly, she did not follow the warning. The tragedy had almost nothing to do with Whirlpool, and Moore fails to support his legal claims that Whirlpool is liable for the explosion and VanMieghem's fatal injuries. We therefore affirm the district court's summary judgment decision.

**Affirmed.**