*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1464**

Alvin Glay, trustee for the next of kin of Unity McGill,
Appellant,

vs.

R.C. of St. Cloud, Inc.,
Respondent.

**Filed May 20, 2024**
**Reversed and remanded**
**Wheelock, Judge**
**Dissenting, Slieter, Judge**

Stearns County District Court
File No. 73-CV-21-129

Joel E. Smith, Kara K. Rahimi, Kosieradzki Smith Law Firm, LLC, Plymouth, Minnesota
(for appellant)

Gregory A. Zinn, Gregory A. Zinn, PLC, Minneapolis, Minnesota (for respondent)

Michael A. Bryant, Tucker L. Isaacson, Bradshaw & Bryant, PLLC, Waite Park, Minnesota
(for amicus curiae Minnesota Association for Justice)

Considered and decided by Wheelock, Presiding Judge; Slieter, Judge; and Schmidt,

Judge.

**NONPRECEDENTIAL OPINION**

**WHEELOCK**, Judge

Appellant challenges the district court's denial of his motion for a new trial in a

wrongful-death lawsuit after the jury found that respondent's negligence was not a direct

cause of decedent's death. Appellant argues that the district court erred by (1) allowing the jury to compare the fault between intentional and negligent tortfeasors, (2) instructing the jury to consider superseding cause, and (3) denying appellant's motion for a new trial on damages. We reverse and remand.

## FACTS[1]

In the early hours of December 29, 2019, decedent Unity McGill witnessed Lawrence Johnson, Christopher Johnson, and Bryant Stephenson (the third-party defendants) attack another patron on the dance floor of Red Carpet Nightclub, which is owned by respondent R.C. of St. Cloud Inc.[2] McGill tried to break up the fight, and the third-party defendants began attacking McGill. RCN security intervened, broke up the fight, and removed the third-party defendants from the property. RCN security had removed the third-party defendants from RCN on several previous evenings for engaging in physical altercations in the club.

RCN's policy prohibits patrons from returning the same evening when security removes them for fighting. However, after removing the third-party defendants for fighting on December 29, the RCN security staff who removed the third-party defendants did not alert the other RCN staff that the third-party defendants could not return that night. Roughly 17 minutes after RCN security staff removed the third-party defendants, they were

---

[1] The facts recited are based on the evidence presented at trial and viewed in the light most favorable to the verdict. *Reedon of Faribault, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*, 418 N.W.2d 488, 491 (Minn. 1988).

[2] For ease of reference throughout this opinion, we refer to the nightclub and the corporation interchangeably as RCN.

2

allowed to reenter RCN.  When the third-party defendants reentered, RCN security did not use a metal-detecting wand on all of them.

A short time later, one member of the RCN security staff who had initially removed the third-party defendants spotted them around the dance floor.  The security staff member did not want to remove the third-party defendants on his own, so he stepped away from the dance floor to get assistance from other security staff to remove the men again.  As soon as the security staff member turned away, the third-party defendants attacked McGill, beating him and stabbing him with a weapon.  It is unclear whether the third-party defendants had the weapon when they reentered RCN or another patron gave it to them, as video footage from inside the club shows someone throwing an object to one of the men immediately before they begin to attack McGill.  The weapon was never found.

Eight or nine seconds passed before RCN security staff stepped in, and they did not realize that the attack was life-threatening until they turned on the lights and saw the amount of blood on the floor.  The third-party defendants continued to follow and attack McGill as he tried to leave RCN and collapsed near the front entrance.  Emergency personnel responded and rushed McGill to a hospital, but he died shortly after arriving at the hospital as medical staff attempted to treat his multiple deep stab wounds.  Each of the third-party defendants was found guilty and convicted of charges related to McGill's murder.

At least two RCN security staff members who had been working on December 29 resigned shortly after that night.  During a deposition, one of the staff members explained that he quit because of inadequate pay, lack of support from management, an insufficient

3

number of security personnel on staff, and RCN management's failure to address these problems prior to this incident.

In January 2021, appellant Alvin Glay, as trustee for McGill's next of kin, initiated this wrongful-death lawsuit against RCN. Glay alleged that RCN was liable for McGill's death under an innkeeper's duty[3] because RCN owed its patrons a duty to use reasonable care, RCN knew about the dangerous tendencies of the third-party defendants, and RCN failed to exercise reasonable care on the night of the murder.

In August 2021, RCN served a third-party complaint on the third-party defendants. In its complaint, RCN asserted that the third-party defendants' conduct in beating and stabbing McGill constituted an intervening and superseding cause such that the third-party defendants should indemnify RCN for, or otherwise contribute to, any judgment Glay recovered from RCN. Glay then amended his original complaint to add a direct cause of action for civil battery against the third-party defendants, thereby seeking damages from both RCN and the third-party defendants. The third-party defendants have not participated in these civil proceedings.[4]

---

[3] Innkeeper's duty is the term for the duty a bar owes to its patrons. *See Henson v. Uptown Drink, LLC*, 922 N.W.2d 185, 191 (Minn. 2019) ("[O]ur precedent is clear that bar owners, as do all innkeepers, have a duty of care."); *Swanson v. Dugout, Inc.*, 98 N.W.2d 213, 215 (Minn. 1959) (explaining that the "operator of an establishment where beer and liquor are sold has the duty to see to it that a patron is not injured by vicious and drunken individuals who[] may have been permitted to frequent [the] establishment").

[4] All three third-party defendants are currently incarcerated for the second-degree intentional murder of McGill or for aiding and abetting his second-degree intentional murder.

4

In March 2022, Glay and RCN filed motions for summary judgment. Glay moved for summary judgment against the third-party defendants because their criminal convictions conclusively established their liability. The district court granted Glay's motion to the extent that it determined the third-party defendants were at fault as a matter of law, but it reserved the "determination of joint and several liability of the third-party defendants with [RCN]." RCN moved for summary judgment on all its claims, and the district court denied the motion in its entirety.

In October 2022, the case proceeded to a jury trial with testimony from RCN security personnel, an expert on security communications, McGill's family, and the owner of RCN. The parties disagreed about the jury instructions and made "extensive arguments" about the special-verdict form, including, as is relevant to this appeal, the innkeeper's-duty and superseding-cause instructions. Glay objected to the superseding-cause instruction, asserting that, because the innkeeper's-duty instruction incorporated the direct- and superseding-cause issues, adding a specific instruction on superseding cause was duplicative and could "create a perverse verdict." Over Glay's objections, the district court included both instructions.

Pursuant to its rulings, the district court first provided the jury with the following instruction on the innkeeper's duty:

> **Standard of conduct**
> [RCN] is required to use reasonable care in operating their business.

**Definition of "reasonable care"**

"Reasonable care" is the care that a reasonable person would use in similar circumstances. The failure to use reasonable care is negligence.

**Definition of "negligence"**

"Negligence" is doing something that a reasonable person would not do, or failing to do something a reasonable person would do, in similar circumstances.

**Definition of "foreseeability"**

An injury is foreseeable if a reasonable person in the same or similar circumstances would have foreseen it. The exact way an injury occurred does not have to be foreseeable.

**Deciding negligence**

[RCN] was negligent if:

1. [RCN] was put on notice of the offending person's vicious or dangerous potential by some act or threat, and

2. [RCN] had an adequate opportunity to protect the injured person, and

3. [RCN] failed to take reasonable steps to protect the injured person; and

4. The injury was foreseeable.

The district court then provided the jury with the following instruction on direct cause and superseding cause:

**Definition of "direct cause"**

A "direct cause" is a cause that had a substantial part in bringing about the event.

**Superseding Cause**

*However, a cause is not a direct cause when there is a superseding cause.*

A cause is a superseding cause when four conditions are present:

1. It happened after the original negligence; and

2. It did not happen because of the original negligence; and

6

> 3. It changed the natural course of events by making the result different from what it would have been; and
>
> 4. The original wrongdoer could not have reasonably anticipated this event.

(Emphasis added.)

The district court also provided the jury with a special-verdict form that contained seven questions for the jury to answer. Before providing the form to the jury, the district court marked "yes" in answer to the first two questions on the special-verdict form because it had granted summary judgment against the third-party defendants on those questions. Those first two questions read:

> 2. Did [the third-party defendants] intentionally harm Unity McGill on December 29, 2019?
>
> 2. Were [the third-party defendants'] intentional acts a direct cause of Unity McGill's death on December 29, 2019?

Questions three and four read:

> 3. Was [RCN] negligent in failing to take reasonable steps to protect Unity McGill from the intentional acts of [the third-party defendants] on December 29, 2019?
>
> 4. Was [RCN's] negligence a direct cause of Unity McGill's death on December 29, 2019?

The jury answered "Yes" to question three and "No" to question four. The jury was instructed that if it answered "No" to question four, it did not need to complete questions five or six, which read:

> 5. Was the conduct of [the third-party defendants] a superseding cause of the death of Unity McGill on December 29, 2019?

6. Taking all of the conduct that had contributed as a direct cause of the death of Unity McGill as 100%, what percentage of fault do you attribute to:

> A. [RCN] _____%
> B. [third-party defendants] _____%
>
> TOTAL: 100%

Question seven asked the jury to identify an appropriate sum of damages. The jury found zero dollars in damages would compensate McGill's next of kin for the loss of McGill.

Glay moved for a new trial, arguing that the district court improperly instructed the jury to compare the negligent conduct of RCN with the intentional conduct of the third-party defendants and to consider superseding cause. Glay also argued that the finding of zero dollars in damages was contrary to the evidence and influenced by passion or prejudice.

The district court denied the motion in part, reasoning that there was no reversible error in the jury instructions because (1) Glay did not initially object to the jury instructions on negligence and direct causation; (2) Glay's initial jury instructions included an instruction on apportionment of damages; and (3) the district court heard extensive arguments related to jury instructions, including on the final day of trial. As to the portion of Glay's motion requesting a new trial on damages, the district court denied the motion as to RCN, reasoning that the zero-dollar damages finding was consistent with the jury's finding that RCN was not liable for McGill's death, but granted the motion as to the

third-party defendants because the zero-dollar damages award was contrary to the evidence presented about the value of McGill's life and was influenced by passion or prejudice.[5]

Glay appeals.

## DECISION

Glay asserts that the district court erred in denying his motion for a new trial because (1) the district court erred in giving the superseding-cause instruction and (2) the jury's finding of zero damages is contrary to the evidence provided about the value of McGill's life and to the jury's finding that RCN was negligent. We address each assertion of error in turn.[6]

A party may appeal from a district court's order denying a new trial. Minn. R. Civ. App. P. 103.03(d). A district court may order a new trial for a number of enumerated reasons, including an insufficient award of damages influenced by passion or prejudice, errors of law occurring at trial to which the party moving for a new trial objected, or when the verdict is contrary to law. Minn. R. Civ. P. 59.01(e)-(g). We review the denial of a motion for a new trial for an abuse of discretion. *Christie v. Est. of Christie*, 911 N.W.2d

---

[5] The district court did not order a new trial despite granting this portion of Glay's motion. Rather, the district court permitted Glay to pursue a new trial against the third-party defendants but stated that it would be up to Glay to decide whether to do so because they "are serving significant sentences with the Minnesota Department of Corrections."

[6] Glay also asserts that the district court erred in denying his motion for a new trial because the jury should not have been instructed to compare the negligent acts of RCN and the intentional acts of the third-party defendants. Both the parties and the amicus curiae ask us to interpret the Minnesota statutes for comparative fault and apportionment to determine whether intentional and negligent torts can be compared in allocating fault. But because we reverse on the issue of the superseding-cause instruction, we do not reach this question of first impression.

833, 838 (Minn. 2018) (citing *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 892 (Minn. 2010)).

## I. The district court abused its discretion when it provided the superseding-cause instruction because it created confusion and prejudiced Glay.

Glay argues that the district court erred by instructing the jury on superseding cause because the instruction confused the jury and the jury found that RCN was negligent pursuant to the innkeeper's duty, which included an instruction on foreseeability.[7] We agree with Glay.

We review the district court's jury instructions for an abuse of discretion. *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002). An erroneous jury instruction is one that materially misstates the law. *Rowe v. Munye*, 702 N.W.2d 729, 735 (Minn. 2005). In this case, the jury received instructions on the innkeeper's duty that included the element of foreseeability and also received instructions on direct cause and superseding cause. As a general rule in negligence claims, a criminal act breaks the chain of causation—and thus is a superseding cause of a plaintiff's harm—but there is an exception that applies when the criminal act is reasonably foreseeable. *Pearson v. Henkemeyer*, 503 N.W.2d 504, 507 (Minn. App. 1993), *rev. denied* (Minn. Sept. 30, 1993); *see Hilligoss v. Cross Cos.*, 228 N.W.2d 585, 586 (Minn. 1975).

---

[7] RCN argues that the district court did not err because Glay did not object to the superseding-cause instruction and thus Glay either forfeited this issue or we are limited to plain-error review, but this is incorrect. Glay objected on the record before closing arguments. Thus, the issue has been preserved for appellate review, and our scope of review is not limited to plain error.

Here, the innkeeper's-duty instruction required the jury to decide foreseeability, and the jury decided that the harm was foreseeable because it found RCN negligent when it answered "Yes" to question three on the special-verdict form. But question four required the jury to find foreseeability again when deciding whether RCN was a direct cause of McGill's death. Thus, in deciding the questions on the special-verdict form, the jury relied on conflicting jury instructions. Considering the superseding-cause instruction in context, we conclude that it was error to instruct the jury specifically as to superseding cause because the legal relationship between superseding cause and foreseeability was subsumed within the innkeeper's-duty instruction.

The dissent argues that because Glay agreed to the added element of foreseeability in the innkeeper's-duty instruction, Glay invited any error that resulted from giving the superseding-cause instruction.[8] But Glay objected to the superseding-cause instruction. Thus, we see no invited error here.

Having determined error, we next consider whether there was prejudice. An erroneous jury instruction compels a new trial only if the error is prejudicial. *Rowe*, 702 N.W.2d at 743. The error is prejudicial if a more accurate instruction would have changed the outcome of the case. *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 885 (Minn. 1986). If we cannot determine the effect of the erroneous instruction, then we will grant a new trial. *Rowe*, 702 N.W.2d at 743; *Morlock v. St. Paul*

---

[8] The dissent is correct when it says that caselaw demonstrates the issue of foreseeability is best left to the district court and should not be given to the jury; however, when foreseeability is uncertain, it becomes a question of fact for the jury. *Warren v. Dinter*, 926 N.W.2d 370, 378 (Minn. 2019).

*Guardian Ins. Co.*, 650 N.W.2d 154, 159 (Minn. 2002) ("A new trial is also required if the instruction was erroneous and its effect cannot be determined."). If it is equally possible that the erroneous jury instruction may have prejudiced or may not have prejudiced the complainant, the tie goes to the objector and a new trial is ordered. *George v. Est. of Baker*, 724 N.W.2d 1, 10 (Minn. 2006) ("If the effect of the erroneous instruction cannot be determined, we will give the complainant the benefit of the doubt by granting a new trial."); *Poppler v. Wright Hennepin Co-op Elec. Ass'n*, 834 N.W.2d 527, 548 (Minn. App. 2013) (stating that, if "it is impossible to know whether the jury's verdict" was affected by an error, then "a new trial is the only viable option" (quotation omitted)), *aff'd*, 845 N.W.2d 168 (Minn. 2014).

On these facts, we cannot determine the effect of the erroneous instruction and must resolve the uncertainty in Glay's favor. In addition to receiving the definition of foreseeability within the innkeeper's-duty instruction, the jury received instructions on direct cause and superseding cause that provided two different definitions of direct cause. Defining a term by explaining what it is not becomes "unnecessarily abstruse and confusing." *See Orwick v. Belshan*, 231 N.W.2d 90, 97-98 (Minn. 1975) (addressing a jury instruction that defined proximate cause by explaining what it is not). Conflicting instructions are likely to confuse a jury. *See George*, 724 N.W.2d at 10 (determining that the district court confused the jury by providing two different instructions on the duty of care).

Here, the district court first instructed the jury that "[a] 'direct cause' is a cause that had a substantial part in bringing about the event." And the very next instruction told the

jury that "[a] cause is not a direct cause when there is a superseding cause." This presents the situation about which the supreme court warned in *Orwick*. In that case, the jury received an instruction on causation, and when the jury requested clarification of the definition of causation, the district court provided an explanation of superseding cause as an example of what is *not* a direct cause. *Orwick*, 231 N.W.2d at 97. The supreme court held that this confused the jury, and it remanded the case. *Id.* at 98. Here, too, the district court instructed the jury on direct cause, then defined the existence of a superseding cause as an example of when a cause is *not* a direct cause before proceeding to provide the elements of superseding cause.

These instructions may have led the jury to apply the wrong definition of direct cause when answering question four on the verdict form: "Was [RCN's] negligence a direct cause of Unity McGill's death on December 29, 2019?" The jury may have believed that answering "No" to this question meant that RCN's negligence did not have a substantial part in bringing about the death of Unity McGill. But it is also possible that the jury believed that answering "No" meant that, because there was a superseding cause, RCN's negligence could not be a direct cause. Both possibilities are inconsistent as a matter of law with the jury's determination that the actions of the third-party defendants were foreseeable under the innkeeper's duty. Because it is likely that the inclusion of the superseding-cause instruction prejudiced Glay, we reverse and remand for a new trial.

**II.** **The new trial will include the issue of damages owed by both RCN and the third-party defendants.**

Glay argues that the district court erred when it denied his motion for a new trial because the jury's award of zero damages was insufficient as to RCN. RCN argues that because Glay did not submit evidence to show pecuniary loss, there was no error. The district court denied a new trial on damages as to RCN because the jury determined that RCN was not liable. Given that we reverse and remand for a new trial on RCN's liability, we also reverse the denial of a new trial on damages as to RCN. The district court properly concluded that the jury's finding of zero damages as to the third-party defendants was the result of passion and prejudice, and thus the same holds true for the zero-damages finding as to RCN.

Because we determine that Glay is entitled to a new trial on RCN's liability to remedy the erroneous superseding-cause instruction that prejudiced Glay, we also reverse and remand for a new trial on the damages RCN owes should it be found liable.

**Reversed and remanded.**

14

**SLIETER**, Judge (dissenting)

I respectfully dissent. I would affirm because the district court (1) did not err when it instructed the jury as to comparative fault; (2) properly instructed the jury on superseding cause, and even if there was error it was invited; and (3) properly denied appellant's motion for a new trial on damages with respect to RCN.

## I. The district court properly instructed the jury on comparative fault.

Appellant Alvin Glay, trustee for the next of kin of Unity McGill, claims that it was an error for the district court to instruct the jury to compare the fault between a negligent tortfeasor, respondent R.C. of St. Cloud Inc. (RCN), and an intentional tortfeasor, the third-party defendants. In declining to address this argument, the majority determines that the plain language of Minnesota Statutes sections 604.01 and 604.02 does not resolve the question raised by Glay. And, because we are an error correcting court, we cannot decide the issue. I disagree. I discern no ambiguity in the statutes nor any error with the district court's decision to instruct the jury to compare the fault of the defendants. I would, therefore, affirm.

"The interpretation of a statute is a question of law reviewed de novo." *Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016). When interpreting statutes, "we interpret the statute as a whole, considering the provision at issue in light of the surrounding sections to avoid conflicting interpretations . . . we must construe a statute to give effect to all of its provisions." *Id.* (quotations omitted).

The two sections implicated in this case are Minn. Stat. § 604.01 (2022) (prescribing comparative fault) and Minn. Stat. § 604.02 (2022) (outlining apportionment of damages).

D-1

Minnesota Statutes section 604.01, subdivision 1, provides the scope of its application as follows:

> The court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each party and the court shall then reduce the amount of damages in proportion to the amount of fault attributable to the person recovering.

Subdivision 1a defines fault as negligent conduct. Minn. Stat. § 604.01, subd. 1a. It is this definition that leads Glay to argue that the fault of RCN may not be compared to the intentional conduct of the third-party defendants. This would be persuasive only if we did not also consider Minnesota Statutes section 604.02. And, upon reading the language in that section, Glay's argument cannot be accepted because it would render much of 604.02 superfluous. This, we cannot do. *See* Minn. Stat. § 645.16 (2022) ("Every law shall be construed, if possible, to give effect to all its provisions.").

Minnesota Statutes section 604.02, subdivision 1, the apportionment-of-damages statute, states: "When two or more persons are severally liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that the following persons are jointly and severally liable for the whole award . . . a person who commits an intentional tort[.]"

Thus, the plain language of section 604.02 necessarily contemplates the situation presented in this case: comparing liability between "two or more persons," one who commits a negligent tort with one who commits an intentional tort, and directs that liability be assigned "in proportion to the percentage of fault attributable to each." *Id.* And, after

determining the percentage of fault, the statute specifically excepts an intentional tortfeasor from several liability. Therefore, the plain language of section 604.02 specifically permits the comparison of fault between negligent and intentional tortfeasors.

However, to the extent that the intentional tortfeasor is found to be liable for less than the full amount of damages, that tortfeasor remains jointly and severally liable for the whole award. *See Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 74 (Minn. 2012) (*Staab I*) (explaining that Minnesota common law separates a "jointly and severally liable" defendant who may be responsible for the entire award, whereas a "severally liable" defendant's liability is separate and they may not be responsible for the entire award).[1] Therefore, the district court properly instructed the jury to compare the fault of the negligent tortfeasor (RCN) with the intentional tortfeasors (third-party defendants).

Although the opinions only address section 604.02, the Minnesota Supreme Court's *Staab* decisions provide useful analysis that supports this interpretation. *Id.* at 77-78; *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 715 (Minn. 2014) (*Staab II*). In *Staab I*, the supreme court summarized the legislature's 2003 amendment to section 604.02, subdivision 1, as follows: "Therefore, we conclude that the 2003 amendments to the statute clearly indicate the Legislature's intent to limit joint and several liability to the four circumstances enumerated in the exception clause, *and to apply the rule of several liability in all other circumstances*." 813 N.W.2d at 78 (emphasis added). Accordingly, as a negligent tortfeasor, the rules of several liability apply to RCN and the damages it owes

---

[1] It is notable that Glay's proposed special-verdict form required the jury to apportion a percentage of fault between RCN and the third-party defendants.

are limited to its percentage of the injury to Glay. That percentage cannot be determined unless its liability is compared to the intentional tortfeasors' liability. And, if RCN cannot have its liability compared to that of the third-party defendants, the risk is that it might, despite being a negligent tortfeasor, become liable for more than its equitable share of the injury. This would be contrary to the statute as determined by *Staab I*, which limits joint and several liability to four circumstances. *Id.*

Furthermore, allowing the jury to compare RCN's fault to the intentional tortfeasors (i.e., the third-party defendants) is not contrary to the holding in *Florenzano v. Olson* that "principles of comparative negligence [do] not apply to an intentional tort." 387 N.W.2d 168, 175 (Minn. 1986). Section 604.02 codifies the common-law exception that prohibits intentional tortfeasors from having their equitable share of the injury reduced. *See* Minn. Stat. § 604.02, subd. 1(3). They may be held jointly and severally liable for the entire amount of injury regardless of how the jury would have apportioned their percentage.

In *Staab II*, the supreme court reaffirmed its conclusion from *Staab I* that "[a] severally liable party is responsible for only his or her equitable share of a damages award, even if the plaintiff chooses to sue fewer than all tortfeasors who caused the harm." *Staab II*, 853 N.W.2d at 718. The supreme court went on to address a policy argument similar to that which Glay makes regarding the possibility that an injured plaintiff may not be fully compensated for their injuries, though *Staab II* only considered Minn. Stat. § 604.02. The court explained:

> [t]he fact that one liable party is insolvent or cannot be collected from for other reasons is not one of the four exceptions in subdivision 1 to which joint and several liability

still applies. Yet that would be the practical effect of permitting reallocation to severally liable parties under subdivision 2.

*Id.* at 719. Here, Glay and the *amicus* claim that allowing the jury to compare RCN's fault with that of the third-party defendants may reduce the equitable share of RCN's liability. Even accepting this argument does not change the statute. The statute allows RCN's fault to be compared to the fault of the intentional acts of the third-party defendants and allows RCN to be assured that it will not be responsible for more than its equitable share of the injury.

**II.    The district court did not err when it instructed the jury on superseding cause.**

The crux of Glay's claim for a new trial, and the reason that the majority reverses and remands for a new trial on liability, is that the district court abused its discretion when it instructed the jury on superseding cause. The majority determines, as a matter of law, that the district court erred by instructing the jury on innkeeper's duty and superseding cause, each of which included foreseeability instructions. The majority then determines that this error prejudiced Glay because the jury may have been confused by the foreseeability instruction and two different definitions of "direct cause."

The district court provided the jury with the definition of negligence under an innkeeper's duty as follows:

> [RCN] was negligent if:
> 1.      [RCN] was put on notice of the offending person's vicious or dangerous potential by some act or threat, and
> 2.      [RCN] had an adequate opportunity to protect the injured person, and

3.      [RCN] failed to take reasonable steps to protect the injured person; and
4.      The injury was foreseeable.

The district court provided the following standard jury-instruction definition of foreseeability: "An injury is foreseeable if a reasonable person in the same or similar circumstances would have foreseen it.  The exact way an injury occurred does not have to be foreseeable."  *See* 4 *Minnesota Practice*, CIVJIG 25.10 (2014) (demonstrating that the jury instruction provided by the district court matched the model jury instruction).  The district court also instructed the jury on the elements of superseding cause as follows:

A cause is a superseding cause when four conditions are present:
1.      It happened after the original negligence; and
2.      It did not happen because of the original negligence; and
3.      It changed the natural course of events by making the result different from what it would have been; and
4.      The original wrongdoer could not have reasonably anticipated this event.

On the special-verdict form, question three asked the jury whether RCN was negligent.  The jury answered yes.  Question four then asked the jury whether RCN's negligence was the direct cause of McGill's death.  The jury answered no.  The special-verdict form instructed the jury to only answer question five, on the issue of superseding cause, if it answered yes to question four.  Consistent with this instruction, the jury did not answer the superseding-cause question.

Glay argues on appeal that because the district court instructed the jury that foreseeability was an element of the innkeeper's duty and instructed the jury on superseding cause, this confused the jury.  Specifically, he argues that the jury's finding

that RCN was negligent necessarily means the jury found that McGill's death was foreseeable, and this conflicts with the fourth element of the superseding-cause instruction that RCN could not have "reasonably anticipated this event." Hence, Glay argues, the district court erred by instructing the jury on superseding cause.

The confusion that Glay claims caused error is the foreseeability element in the innkeeper's-duty instruction that the district court provided to the jury. That is, Glay's claim of confusion is not directly related to the superseding-cause instruction. The model jury instruction regarding an innkeeper's duty does not include a foreseeability element. 4A *Minnesota Practice*, CIVJIG 85.70 (2014). More importantly, caselaw has expressed concern about asking the jury to answer the foreseeability question when determining an innkeeper's duty. This modified instruction created the very problem that the supreme court predicted in *Alholm v. Wilt*, 394 N.W.2d 488, 491 n.5 (Minn. 1986). In that case, the supreme court warned that submitting the issue of foreseeability to a jury in an instruction on innkeeper's duty is troubling and "more properly decided by the court prior to submitting the case to the jury" because the issue of foreseeability is often a legal question. *Id.*

However, not only did Glay fail to object to the innkeeper's-duty instruction as modified by the district court, the record reflects that Glay specifically agreed to the added foreseeability element:

> COURT: Okay. Next one is the innkeeper's duty under 85.70.
> I first want to make a record on this. Most of it is standard
> under 85.70, but I'm going to tell you what I changed. . . . I
> added the definition of foreseeability. . . . And the standard

> jury instruction does not have the fourth element [of foreseeability] listed.
>
> . . .
>
> COURT: So you have no objection to the what the court has proposed?
>
> PLAINTIFF: No. I think it's totally appropriate.
>
> COURT: All right.

Because Glay agreed to the modification of the innkeeper's-duty instruction, any asserted confusion caused by the superseding-cause instruction is an invited error, for which Glay may not obtain a new trial.

The invited-error doctrine "precludes a party from asserting error on appeal which he invited or could have prevented in the [district] court." *In re Hibbing Taconite Mine & Stockpile Progression*, 888 N.W.2d 336, 344 (Minn. App. 2016). It is unsettled whether an invited error in a civil case may be reviewed for plain error to determine if relief should be afforded. *See Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 626 (Minn. 2012) (considering whether relief could be granted after an invited error at all, even under a theory of plain error); *see also* Minn. R. Civ. P. 51.04(b) ("A court may consider a plain error in the instructions affecting substantial rights that has not been preserved as required by 51.04(a)(1) or (2)"). But, as in *Frazier*, that need not be decided because Glay cannot satisfy the plain-error test.

The plain-error test in civil cases is the same as in criminal cases. *See Frazier*, 811 N.W.2d at 626-27 (explaining the plain-error test applied in criminal cases and applying the same test in the present civil case). Under the plain-error test, an appellate court reviews an assertion of error to determine (1) whether there is an error, (2) whether the error is plain, and (3) whether the error affects a party's substantial rights. *Id.* at 626. If all three

requirements of the plain-error test are satisfied, an appellate court must consider a fourth requirement, whether correction of the error is necessary "to ensure fairness and the integrity of the judicial proceedings." *Id.* at 626-27.

Because Glay asserts that the district court erred by instructing the jury on superseding cause, that is the instruction we review, and I would review it under plain error.

**Error That Is Plain**

Glay cites no caselaw that a superseding-cause instruction, if the facts dictate, is improper in an innkeeper's-duty action. The facts of this case support a superseding-cause instruction because "[a]s a general rule, a willful, malicious, or criminal act breaks the chain of causation and is a superseding cause." *Anderson v. Theisen*, 43 N.W.2d 272, 274 (Minn. 1950). And, even if Glay had demonstrated that there was error, he does not show that the error was plain. "An error is plain if it is clear or obvious, and an error is clear or obvious if it contravenes case law, a rule, or a standard of conduct." *Poppler v. Wright Hennepin Co-op Elec. Ass'n*, 834 N.W.2d 527, 552 (Minn. App. 2013) (citations and quotations omitted), *aff'd*, 845 N.W.2d 168 (Minn. 2014). As already noted, Glay provided no caselaw to support his assertion that the district court's superseding-cause instruction for the jury was an error based upon the facts of this case. And, though the analysis may end here because Glay must satisfy all three prongs to obtain relief and he has not satisfied the first prong, I nevertheless consider the remaining prongs. *See id.* at 551 (explaining the three prongs of the plain-error test that must be met before a court can consider relief).

**Substantial Rights**

"An error affects substantial rights where there is a reasonable likelihood that the absence of the error would have had a significant effect on the jury's verdict." *Id.* at 553 (quoting *State v. Reed*, 737 N.W.2d 572, 583 (Minn. 2007)). Glay has not demonstrated that his substantial rights were affected.

As noted, the jury did not answer the superseding-cause question and we assume that the jury followed the instructions provided. *Frazier*, 811 N.W.2d at 630. "[A] special verdict form is to be liberally construed to give effect to the intention of the jury and on appellate review it is the court's responsibility to harmonize all findings if at all possible." *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 662 (Minn. 1999). The jury answered no to question four (deciding that RCN was not a direct cause in McGill's death) and did not answer question five (whether the conduct of the intentional tortfeasors was a superseding cause in McGill's death), consistent with the instructions on the special-verdict form (not to answer five if the jury answered no to four). Glay, therefore, cannot demonstrate that the superseding-cause instruction affected his substantial rights.

**Fairness and Integrity**

The final requirement for relief based on plain error is for Glay to demonstrate that the claimed error affected the "fairness and the integrity of the judicial proceedings." *Frazier*, 811 N.W.2d at 626-27 (quotation omitted). Glay's argument that comes closest to addressing this requirement (because Glay does not argue plain error) is that the instructions confused the jury.

We must harmonize the jury's findings to discern a consistent verdict. *See Kelly*, 598 N.W.2d at 662. At trial, Glay focused on two primary theories of RCN's negligence: first, allowing the third-party defendants to reenter the premises after being removed by security staff, and second, by not using the metal-detecting wand on each of the third-party defendants. However, the jury viewed video evidence that would support a finding that the weapon used to attack McGill may have been already at RCN, past the security staff and on the dance floor, when the third-party defendants reentered the establishment. An RCN security staff person from that night testified that the video appears to show another patron throwing something to one of the third-party defendants immediately before the third-party defendants began attacking McGill. Therefore, there is a theory, consistent with the jury's verdict, that the jury could have determined RCN was negligent, but not a direct cause of McGill's death. Specifically, that some unknown patron threw the weapon to the third-party defendants after they reentered the premises and after being inspected with the metal-detecting wand. It is reasonable for a jury to determine that RCN could not have reasonably anticipated (the fourth element of superseding cause) that another person would throw the third-party defendants a weapon, the injuries from which caused McGill's death. Harmonizing the jury's verdict with the judgment, as we must, I would conclude that there is no reversable error.

III.    **The district court properly denied Glay's motion for a new trial on the issue of damages related to RCN.**

Because I would affirm the district court's denial of Glay's motion for a new trial on liability, and because the district court has already granted Glay's motion for a new trial

on the issue of damages owed by the third-party defendants, I would affirm the district court's order on that issue as well.

For the foregoing reasons, I respectfully dissent and would affirm the district court's order denying Glay a new trial.